EDISON ELECTRIC ILLUMINATING COMPANY OF BROOKLYN,
Respondent, v. THOMAS O. THACHER, Appellant.

Contract — evidence — prior negotiations — when intention
of parties may be spelled out of the phrasing although not
clearly expressed — when prior correspondence between the
parties as to quantity of goods to be delivered cannot be received
in evidence to modify such contract.

1. It is not necessary in all cases that the agreement of a party
should be specifically stated. It is sufficient when the wording used
clearly indicates the intention. Contracts, unlike deeds and insurance
policies, need not take a prescribed form but are spelled out of the
phrasing adopted by the parties.

2. The plaintiff entered into a contract in writing with the defendant
wherein defendant agreed to furnish certain articles as required in
its business for a period of twelve months. Defendant furnished a
certain quantity but refused to deliver any more at the contract
price, claiming that the contract called for only the quantity furnished
and that he rightfully refused to make further delivery except at
increased and increasing market price. Plaintiff was obliged to buy
the articles so refused to be furnished and brings this suit to recover
the difference in the cost. The question is as to the construction of
the contract. On examination of its terms, *held*, that the contract
bound both parties, the one to furnish and the other to order all that
was required in the plaintiff's business for the year.

3. The contract was a formal instrument as appears from its form
and phraseology. It was prepared after preliminary estimates and
correspondence regarding its terms. It was sent to the defendant
by the plaintiff for perusal and signature and it was returned signed
by the defendant. It was complete in itself; hence the prior corre-

spondence cannot be examined to determine whether the quantity delivered was the limit to be furnished or whether the contract called for all the plaintiff's requirements for the year.

*Edison El. Ill. Co.* v. *Thacher,* 186 App. Div. 966, affirmed.

(Argued May 5, 1920; decided June 1, 1920.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered January 27, 1919, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John A. Delehanty* for appellant. The exclusion of the several letters comprising the correspondence between plaintiff and defendant was reversible error. (*Emmett* v. *Penoyer,* 151 N. Y. 567; *Cooper* v. *Payne,* 186 N. Y. 334; 186 App. Div. 966; *Routledge* v. *Worthington Co.,* 119 N. Y. 592; *Akberg* v. *Kress Brewing Co.,* 65 Hun, 182; *Tocci* v. *Arata,* 16 Daly, 494; *Medical College* v. *N. Y. University,* 76 App. Div. 48.) The so-called agreement lacks mutality, is without consideration and not enforcible by either party, and, therefore, *nudum pactum.* (*Pollock* v. *Shubert Theatrical Co.,* 146 App. Div. 628; *Rafolovitz* v. *American Tobacco Co.,* 73 Hun, 87; *Collins* v. *Am. News Co.,* 34 Misc. Rep. 260; 68 App. Div. 639; *Comcl. W. & C. Co.* v. *Northampton P. C. Co.,* 115 App. Div. 388; *Jackson* v. *Alpha P. C. Co.,* 122 App. Div. 345.)

*George L. Ingraham* and *Carl A. Rood* for respondent. The written contract between the plaintiff and defendant shows a full, definite and complete agreement, lacking no element of an entire contract. (*Wood* v. *Duff-Gordon,* 222 N. Y. 91; *City of New York* v. *Delli Paoli,* 202 N. Y. 18; *Wilson* v. *Mechanical Orguinette Co.,* 170 N. Y. 542; *Wells* v. *Alexandre,* 130 N. Y. 642; *Moran* v. *Standard Oil Co.,* 211 N. Y. 187; *Richards* v. *Edick,* 17 Barb. 260.)

The contract being complete, all correspondence and negotiations between the parties prior to the signing and delivery of the contract were merged in the agreement, and no error was committed in excluding such correspondence. (*Eighmie* v. *Taylor*, 98 N. Y. 288; *Thomas* v. *Scutt*, 127 N. Y. 133; *Lese* v. *Lamprecht*, 196 N. Y. 32; *Studwell* v. *Bush Co.*, 206 N. Y. 416; *House* v. *Walsh*, 144 App. Div. 418; *Eastman* v. *Britton*, 175 App. Div. 476; *Colt* v. *Demarest Co.*, 159 App. Div. 394; *Standard Milling Co.* v. *De Passe*, 154 App. Div. 525; 214 N. Y. 638; *King* v. *H. R. Realty Co.*, 210 N. Y. 467.) The contract which is the basis of this action was a binding agreement which obligated the defendant to supply the plaintiff, and the plaintiff to purchase from defendant, all the manhole covers plaintiff should require in its business for a period of twelve months. (*Wood* v. *Duff-Gordon*, 222 N. Y. 88; *City of New York* v. *Delli Paoli*, 202 N. Y. 18; *Wilson* v. *Mechanical Orguinette Co.*, 170 N. Y. 542; *Wells* v. *Alexandre*, 130 N. Y. 642.)

CRANE, J. The Edison Electric Illuminating Company of Brooklyn entered into a contract with the defendant in writing dated March 31st, 1915, wherein the defendant agreed to furnish to the plaintiff iron manhole frame and cover castings as required in its business for a period of twelve months from April 1st, 1915. The defendant furnished 500 tons of these covers but refused to deliver any more at the contract price. The contract price was $1.30 per 100 pounds. The plaintiff was obliged to buy 254,370 pounds in the market at $1.89 per 100 pounds, and thereafter sued for the difference in cost, or $1,500.78.

The defendant, in his answer, claimed that the contract as made only called for 500 tons and that he rightfully refused to deliver more covers except at the increased and increasing market price. The question upon the trial was to determine the contract which the parties had made.

The defendant set up a counterclaim but this was withdrawn.

The plaintiff had a verdict for the full amount directed by the court upon a motion made by both parties and the judgment entered thereon was affirmed by the Appellate Division by a divided court. The dissenting justices thought that the written contract was not complete and could be explained and added to by prior correspondence.

There are two points presented upon this appeal:

*First.* Is there an enforcible contract.

*Second.* Was the prior correspondence between the parties competent to prove that only 500 tons were to be delivered in the year at the price fixed.

The contract in part reads as follows:

"*First.* The Contractor hereby agrees to furnish all materials and labor necessary and will supply to the Company from time to time as per orders received, good sound manhole frame and cover castings, made from the best quality of gray iron, free from cracks, blow holes, cinders or other defects,— figures RT6, RT12, O6, O12, for the term of 12 months from April 1st, 1915, and thereafter, until thirty days' written notice has been given by either party to the other of its desire to terminate this agreement.  *  *  *

"*Third.* The Company will notify the Contractor, as far as possible in advance of any probable requirements of such manhole castings, in order to aid the Contractor in maintaining sufficient supply of same to meet the orders of the Company.  *  *  *

"PAYMENTS

"*Fourth.* For the said period of 12 months and thereafter until this agreement is terminated, in the manner above prescribed, the terms net 30 days or 1% cash, 10 days, the Company agrees to pay to the Contractor $1.30 per 100 lbs. for castings as hereinbefore mentioned: (RT12, O12: RT6, O6) as per Contractor's quotation to

the Purchasing Agent of March 31st, 1915, it being understood that castings are to be delivered in lots of one or more on the job in any portion of the Borough of Brooklyn as required by the Company. The price named does not include the cost of patterns, but should any change in the patterns be required, the Contractor agrees to do such work free of charge. * * * In the event of strikes, accidents or other hindrances beyond the control of the Contractor, preventing the delivery of castings, the Company reserves the right to place this contract elsewhere, or at its option to permit the Contractor to sub-let the same upon the guarantee of a prompt delivery and at the price above stated."

Analyzed, the agreement is to supply the company from time to time as per orders received with manhole frame and cover castings. Either party on thirty days' notice may terminate the agreement. The company will notify the contractor in advance of its requirements and in the event of strikes the company has the right to place the contract elsewhere.

The intention is quite apparent that the company also obligated itself to take from the defendant all covers required by it and could only go elsewhere for them in case of strike or noncompliance by the defendant with the terms of the contract.

This obligation upon the part of the company is evident from a reading of the whole instrument and is the only reasonable inference to be drawn from its provisions. It is not necessary in all cases that the agreement of a party should be specifically stated. It is sufficient when the wording used clearly indicates the intention. As heretofore stated by this court, contracts, unlike deeds and insurance policies, need not take a prescribed form but are spelled out of the phrasing adopted by the parties. (Wood v. Duff-Gordon, 222 N. Y. 88, 91; City of New York v. Delli Paoli, 202 N. Y. 18; Moran v. Standard Oil Co., 211 N. Y. 187.) This

contract, therefore, bound both parties, the one to furnish and the other to order all that was required in the plaintiff's business for the year.

As to the second point, it was not error to exclude the previous correspondence. The contract was a formal instrument as appears from its form and phraseology. It was prepared after preliminary estimates and correspondence regarding its terms. It was sent to the defendant by the plaintiff for perusal and signature and it was returned signed by the defendant on the 16th day of April, 1915.

The defendant's letter inclosing the contract read:

" We acknowledge your letter of the 15th, enclosing two copies of contract #673 for manhole castings, which we have executed and are returning herewith, one copy to be signed and executed by you and returned to us for our files.

" We note the substitutions as specified in your letter and that you have included our suggestions as per our substitutions, including marginal suggestions which were already covered in the contract."

This indicates that the parties had been negotiating regarding the terms and that the defendant had made suggestions and the plaintiff substitutions, all of which were finally reduced to the form of a contract.

The point now is, can the prior correspondence be examined to determine whether 500 tons was the limit to be furnished or whether the contract called for all the plaintiff's requirements for the year.

The contract itself, as above quoted, states that the defendant agrees to furnish covers from time to time as ordered by the plaintiff. Nowhere in the contract is there is limitation as to amount. The letters excluded but printed in the record on this appeal show that on March 31st, 1915, the plaintiff's purchasing agent wrote to the defendant as follows: " On March 23d, you called

on me and quoted $1.33 per hundred lbs. for 300 to 500 tons a year of manhole castings similar to blue prints shown you."

On April 1st, 1915, the defendant wrote:

" The point is that you want something definite which I now propose to submit unmistakably, though I have had nothing definite from you on which to base my quotation.

" We will furnish your manhole castings 300 to 500 tons, you to furnish patterns, free of charge in accordance with B-Ps submitted to us at a price of $1.30 per 100 lbs. delivered by wagon, motor truck, car or otherwise · at our option, in lots of 2–3–5 or 10 and more, F. O. B. storehouse or any other point in the Borough of Brooklyn, N. Y."

It is significant that this last estimate in some details did not become the contract. For instance, this letter states: " You (the plaintiff) to furnish patterns free of charge."

The contract provides: " The price named does not include the cost of patterns, but should any change in the patterns be required, the Contractor (the defendant) agrees to do such work free of charge."

Again, the above letter says that the castings are to be delivered in lots of two, three, five or ten or more. The contract says in lots of one or more.

If there is this modification between the one-paragraphed estimate and the final contract why may not the 500 tons suggested also have been changed to all that the plaintiff should order. This situation peculiarly suggests the value of the rule that a contract reduced to writing cannot be varied by parol evidence.

The contract was complete in itself. The amount to be delivered was not given in figures but, after suggestions and estimates, was left to the requirements of the plaintiff and such orders as it gave in good faith. This was not an exceptional form of contract. (*Wells* v. *Alexandre*, 130 N. Y. 642.)

This case does not come within the exceptions mentioned in *Emmett* v. *Penoyer* (151 N. Y. 564) and *Cooper* v. *Payne* (186 N. Y. 334).

The judgment should be affirmed, with costs.

HISCOCK, Ch. J., CHASE, HOGAN, CARDOZO, MC-LAUGHLIN and ELKUS, JJ., concur.

Judgment affirmed.