## BAKER et al. v. MURRAY TOOL & SUPPLY CO.

No. 18940. Opinion Filed March 5, 1929.

Rehearing Denied July 16, 1929.

Sands & Campbell and Lydick, McPherren & Jordan, for plaintiff in error.

Wm. Blake and Ed. Crossland for defendant in error.

LEACH, C. This action was commenced in the district court of Pawnee county by Murray Tool & Supply Company, a domestic corporation, against George Baker, H. C. Ledington, Lee McCrory and R. J. Jones, as partners doing business under the firm name of Eureka Sales Company, as defendants, wherein the plaintiff alleged, in substance, in its petition that the defendants were the owners of letters patent upon a gas burner and engaged in its manufacture; that the plaintiff corporation was and had been for many years engaged in the manufacture, repair, and sale of various kinds of oil well supplies and general equipment used in and about the development of oil and gas leases and refinery plants and had formed an extensive business acquaintance throughout the oil fields of Kansas, Oklahoma, and neighboring states and obtained many customers who were engaged in the oil business and in furnishing oil well supplies to various industries engaged in such business, all of such facts being known to the defendants; that on the 25th day of July, 1925, the defendants, Baker, Ledington, and McCrory, who were then the owners of the patent right referred to, bargained, sold, asssigned, and transferred to plaintiff in writing the sole and exclusive right to sell and distribute the patented Eureka Gas Burner to all persons and companies in the oil industry or jobbers selling the oil trade, such right to continue during the life of the patent, a copy of the contract being attached; that after having obtained such right the plaintiff began the sale of the burner and used its best efforts in selling and promoting the sale of the burners as provided in such written sale contract. That the defendants, in violation of the contract, at various times and dates sold and delivered Eureka Gas Burners to various persons and corporations engaged in the oil industry and jobbers selling to the oil trade: that the proceeds derived from such sales, the benefits from which should have inured to the plaintiff, amounted to $10,000, by reason whereof the general business of the plaintiff had been greatly interfered with and impaired; that defendants are continuing in such violation of the terms of the sale contract; that during the year 1926 the plaintiff in carrying out said contract was denied the discount upon the list price of the burners as provided in the contract, and the defendants thereby obtained the sum of approximately $1,500. belonging to the plaintiff; that it has no adequate remedy at law nor means of enforcement of damages as against the defendants, and prayed an injunction against the defendants, their agents and employees, restraining them from the sale of the burners in violation of the terms of the contract and for an accounting and general equitable relief.

A. B. Campbell was later made a party defendant in the action, it appearing he had acquired the interest of R. J. Jones in the partnership.

Demurrers were filed by the respective defendants upon the ground, among others, that the petition did not state facts sufficient to constitute a cause of action in favor of the plaintiff, which demurrers were overruled. Answer was filed, generally denying the allegations of plaintiff's petition, admitting, however, the execution of the written contract, and alleging that the contract was not binding for the reason it was without consideration, that it attempts to bind only the defendants, and the plaintiff is not bound to perform any act under the terms thereof; that the same is not a mutual contract and is purely executory as to future duties and obligations. That plaintiff had violated the terms of the contract in that it failed to pay for burners delivered on the 20th of the month as specified, sold burners at less than the specified price, issued discount sheets in which the Eureka Burner was not listed and in which other burners were listed; the plaintiff had removed Eureka Burners and installed other burners in its shops, had failed to assist in the advertising of the Eureka Burner at the Oil Exposition in Tulsa, and had used every effort to prevent the advertisement of said burners, and through its agents and employees attempted to discourage defendants in the manufacture of their burner, as defendants believe, with the design to secure to itself the patent rights; that defendants notified the plaintiff that the contract was not enforceable and that they elected to terminate the same by reason of the breach of the terms thereof by plaintiff; that the defendants and plaintiff had considerable negotiations respecting the entering into another contract and plaintiff had recognized that the contract sued upon had been breached and terminated.

Upon the trial of the cause the court found generally in favor of the plaintiff and entered judgment perpetually restrain-

ing and enjoining the defendants from selling or distributing the Eureka Gas Burner to any and all persons engaged in the oil industry or persons acting as jobbers selling the same to the oil trade, and directing that an accounting be had between the parties and that upon such accounting judgment may be rendered as the liabilities of the various parties may appear.

Upon denial of motion for a new trial, the defendants bring this appeal, and as grounds of reversal present in their brief two propositions, the first being:

"The evidence showed a breach of the terms of the contract sued upon by plaintiff."

The parties will be referred to herein as they appeared in the trial court.

Under their first proposition defendants refer to the testimony touching on their defense, based on a breach of the contract and its voluntary abandonment, and say, quoting from their brief:

"Contradictory testimony on these various propositions except the propositions with reference to giving preference over other burners was offered by both parties. The court found against us generally on these considerations, and we shall here argue only the proposition with reference to the preference of other burners."

Defendants say plaintiff breached the contract by installing and using different makes of gas burners than the Eureka in its shops, thereby giving preference over the Eureka Burner.

The contract sued upon, omitting unimportant parts, is as follows:

"This contract, made and entered into on this the 21st day of July, 1925, by and between George Baker, H. C. Ledington and Lee McCrory, co-partners, doing business under the firm name and style of Eureka Sales Company, of Pawhuska, Oklahoma, parties of the first part, and the Murray Tool & Supply Company, a corporation, of Cleveland, Oklahoma, party of the second part.

"Whereas, the parties of the first part are the owners and manufacturers of a certain product or commodity known and designated as the Eureka Gas Burner, and desire to promote and extend the sales and distribution thereof to persons and companies engaged in the oil industry; and

"Whereas, it has been mutually agreed by and between the parties hereto that said party of the second part shall have the sole and exclusive right to distribute and sell said commodity or product, either at wholesale or retail, to all persons and companies engaged in the oil industry, or recognized jobbers selling the oil trade.

"Now, Therefore, Witnesseth:

"That the said parties of the first part, for and in consideration of the promises and agreements hereinafter contained, on the part of the party of the second part, to be kept and performed by it, have bargained, sold, transferred and assigned, and by this contract do hereby bargain, sell, transfer and assign unto said party of the second part, its successors and assigns, the sole and exclusive right to sell and distribute, either at wholesale or retail, or both, the above described product or commodity known and designated as the Eureka Gas Burner, to all persons and companies engaged in the oil industry, or jobbers selling the oil trade for a period of time covering the life of the patent on said product and commodity including all improvements thereon; reserving unto said parties of the first part only the right to sell and distribute said product or commodity to persons and companies not engaged in the oil industry as aforesaid.

"It is further agreed that the parties of the first part shall furnish said second party with all of said burners that it may require from time to time during the life of this contract at list price, less thirty-five per cent. f. o. b. factory, payable by said second party at discount of two (2) per cent. on the 20th day of each month following delivery; and it is further agreed that the resale price on all burners, unless otherwise specially agreed, shall be according to the following schedule, to wit:

"From 1 to 5 burners, list price;

"From 6 to 10 burners, list price, less 5 per cent., etc.

"It is further agreed that the initial or first order of said second party for said burners shall be fifty (50) which shall be shipped and distributed by said first parties to the various store points of the second party in the manner designated by said party; * * *

" It is further agreed by and between the parties hereto that the party of the second part shall place stocks of said burners at points in such territory as the parties may hereafter agree, and when so established the parties of the first part agree to furnish a man to introduce said burners to the trade in that territory.

"It is further agreed that should the parties of the second part adopt any other burner giving it preference over the said Eureka Burner this contract becomes null and void, at the election of the parties of the first part.

"It is further agreed that the parties of the first part shall furnish to said second party quantities of pamphlets advertising

said burner within a reasonable time after the execution of this contract for distribution in trade territory; and it is further agreed that the parties hereto shall bear equally all expense that may be incurred in the advertising and demonstrating of said burner at the Oil Exposition to be held in Tulsa, Oklahoma, during the current year. * * *"

The record discloses in part that the Murray Tool & Supply Company maintained shops at Cleveland, Yale, Pawhuska, and Webb City, Okla.; that Eureka Burners had been used part of the time at the Yale and Cleveland shops; that the Webb City shop was equipped at all times with a burner other than the Eureka. That at one time a prospective buyer went to the shop at Yale to inspect the Eureka Burner with a view of purchasing a supply and found a different burner being used. The general shop foreman for the plaintiff corporation testified that a Eureka Burner was installed under the boiler at Yale in the latter part of October, 1925; that it was of a wrong design for that type of boiler and was unsatisfactory; that a second and third burner of the same make but different type was installed and used; that some months later a new forge and furnace was built which necessitated a lower gas pressure and the Eureka Burner was found impracticable, and a different burner was installed; that different types of Eureka Burner were tried out at the Cleveland shop and about January, 1926, two Eureka tubular type burners were there installed, which have proven satisfactory and have since been in operation. That the burner in use at the Webb City shop at the time of entering into the contract was a much higher priced burner than the Eureka and its use has been continued.

Defendants introduced in evidence copy of a letter dated December 6, 1925, less than five months from date of the contract, addressed to the plaintiff corporation in which they complain of the failure of the plaintiff to use the Eureka Burner exclusively in its shops, alleging loss of sales from such failure, and therein advised the plaintiff that by reason of such action on the part of the plaintiff they have been forced·to cancel their contract with plaintiff, receipt of which letter was denied by plaintiff.

Under the terms of the contract the plaintiff obtained the exclusive right to sell and distribute the Eureka Gas Burner to the oil industry. The preference clause or paragraph relied upon by the defendants as giving them a right to have the contract declared null and void by reason of the acts of the plaintiff had reference to the sale of the burners rather than its limited use in the plaintiff's shops. While the conduct of the plaintiff in the use of the Eureka Burner in the shops may not have been entirely in harmony with the spirit of the contract even if within the letter, yet we do not believe there was sufficient to warrant a cancellaion on that ground; the law does not favor forfeitures, and we are unable to say that the conclusion of the trial court upon that point and defense was against the clear weight of the evidence.

The second proposition argued and presented is:

"That the contract sued upon was without consideration, unilateral, null and void and therefore unenforceable."

It is contended by defendants under this proposition that the plaintiff company is not required to purchase any fixed or ascertainable quantity or number of burners; that it may purchase a few or many, can make no effort whatsoever to sell the burners, yet comply with its part of the contract, and may cease to handle the burners at any time without liability. In support of such contention they quote from a number of cases from various jurisdictions which hold that where there is no consideration other than the mutual obligations of the parties to an agreement, both of the parties thereto must be bound, so that either can sue the other for a breach or neither is bound.

The plaintiff corporation contends in its brief that the right to manufacture, use, and sell a patented article by the patentee are distinct and severable rights which may be sold and transferred separately; that in the instant case it purchased and acquired from the defendants a property right in the letters patent, and asserts the contract is mutual and valid.

In construing a contract it will be presumed that the parties thereto intended to make a binding and enforceable obligation, and it should be so held if susceptible of that construction under the law, as is so shown by the following provisions of our statute:

"A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable and capable of being carried into effect, if it can be done without violating the intention of the parties." Section 5046, Comp. Okla. Stat. 1921.

"A contract may be explained by refer-

ence to the circumstances under which it was made, and the matter to which it relates." Section 5050, Comp. Okla. Stat. 1921.

A good consideration is defined by section 5019, Comp. Stat. 1921, to be:

"Any benefit conferred, or agreed to be conferred upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise." .

We are unable to agree with the plaintiff corporation in its contention that it purchased a right in the letters patent. It paid no independent consideration to the defendants and the only consideration referred to or shown in the contract is the mutual obligations and promises therein to be kept and performed. The whereas clause and general wording of the contract refutes the presumption or idea that the defendants were selling and conveying to the plaintiff an interest in the patent itself; it is provided that should the corporation adopt any other burner, giving it preference over the Eureka, then the contract should become null and void at the option of the other parties. The contract relates to the sale and distribution of the manufactured article rather than the sale of an interest in the patent itself and partakes more of a license.

"A license is any right to make, use, or sell the patent invention, which is less than an undivided part interest in the patent itself. * * * " 30 Cyc. 954.

The defendants in support of their argument refer to and quote from many cases which hold that contracts relating to the purchase and sale of products are without consideration, too indefinite, lacking in mutuality, where the purchaser, such as a broker or jobber, has no established business from which it may be reaonably determined what quantity or amount of goods he may require for his needs. One of such cases is Oscar Schlegel Manufacturing Company v. Peter Cooper's Glue Factory, 231 N. Y. 459, 132 N. E. 148, 24 A. L. R. 1348, in which the court calls attention to, and as ground for holding the contract unenforceable, the fact that the purchaser did not agree to purchase any glue, nor did it obligate itself not to sell any other glue in competition with defendant's, and says the plaintiff would likely require or demand glue from the defendant should the price advance, while if there should be a decline in price

below the contract price, then glue could be purchased elsewhere.

The defendants cite the case of Rogers v. White Sewing Mach. Co., 59 Okla. 40, 157 Pac. 1044. In that case the termination of the agreement or contract was not fixed, the machines were to be shipped as ordered by the purchaser, the purchaser or agent did not obligate himself not to sell any other make of machine.

The defendants say the case of Woerheide v. Barber Asphalt Paving Co., 251 Fed. 196, is the one most nearly identical to their case that they have been able to find. The plaintiff there, Woerheide, granted to the defendant the exclusive license to use and sell a patented cleat or fastener for roofing and later brought suit to cancel the contract, alleging it to be void. In that case the court in summing up its opinion said in part:

"The net result of this obligation is that appellee is to exploit the cleat in the various ways generally set forth. but the time for, instruments, and extent of this exploitation are not defined within any ascertainable limits. The appellee could do little or much in presenting the cleats to the trade, and yet be within the contract.

"As to purchase of the cleats, it agreed to purchase in such quantities as might be necessary to fill its orders therefor, but expressly reserved 'the right to pack and sell said goods with or without cleats or otherwise,' as it 'may desire.' Appellee was not obligated to buy a single set of cleats unless it might desire to do so. The entire value to appellants of a contract of sale was the creation and satisfaction of a demand for the cleat. Those were the only subjects concerning which the appellee even pretended to bind itself, and in those regards it did not define its obligations."

By a careful examination and analysis of the many cases cited and a comparison of the contracts therein interpreted with the one involved in the instant case, we believe a marked and distinguishing difference will be found between them.

The word "require," as used in the contract here involved, has frequently been held and construed to mean "needs" or "use." A contract, such as the one at bar, which imposes the duty on one party to furnish the other such quantities of the article in question as the purchaser may require, imposes a corresponding obligation on the part of the purchaser to purchase all of his needs or requirements from the seller. even though it may not be shown by express terms in the contract. 13 Corpus Juris (37) p. 334.

In the case of Minnesota Lbr. Co. v. Whitebreast Coal Co., 160 Ill. 85, 31 L. R. A. 529, 43 N. E. 774, the court, in sustaining the validity of a contract of sale by mining company to a dealer in coal of his requirements, said:

"1. A contract wherein defendant agreed to buy of plaintiff all its 'requirements' of coal for the season at a specified price is not void for uncertainty in that the actual amount of the requirement was not stated, it being manifestly the amount of coal defendant needed and used in its business during the season.

"2. Where defendant agreed to buy its 'requirements' of coal of plaintiff, the contract is mutual, as such provision required defendant to buy all its coal from plaintiff, and was one on which plaintiff could maintain an action for breach, should defendant purchase coal elsewhere.

"If the word 'requirements,' as here used, is so interpreted as to mean that appellee was only to furnish such coal as appellant should require it to furnish, then it might be said that appellant was not bound to require any coal unless he chose, and that, therefore, there was a want of mutuality in the contract. But the rule is that, where the terms of a contract are susceptible of two significations, that will be adopted which gives some operation to the contract, rather than that which renders it inoperative. * * * A contract should be construed in such a way as to make the obligation imposed by its terms mutually binding upon the parties, unless such construction is wholly negatived by the language used. * * * It cannot be said that appellant was not bound by the contract. It had no right to purchase coal elsewhere for use in its business, unless, in case of a decline in the price, appellee should conclude to release it from further liability."

A similar rule and holding is found in Marx v. American Malting Co., 95 C. C. A. 80, 169 Fed. 582; Manhattan Oil Co. v. Richardson Lubricating Co., 51 C. C. A. 553, 113 Fed. 923; Edison Electric Illum. Co. v. Thatcher, 229 N. Y. 172, 128 N. E. 124; Golden Cycle Min. Co. v. Rapson Coal Min. Co., 112 C. C. A. 95, 188 Fed. 179; and other cases found annotated in 14 A. L. R. 1312-1318, and 24 A. L. R. 1352-1356.

It is contended by the defendants that, since the plaintiff had no established business or trade in the particular burner and was not engaged in the manufacture of articles requiring a fixed or ascertainable quantity of such burners, the contract is for that reason indefinite, uncertain, and not within that class of cases where it has been held that such contracts are valid when entered into between a seller and a manufacturer using a known or ascertainable quantity of the product. Crane v. C. Crane & Co. (1901) 45 C. C. A. 96, 105 Fed. 869; Lima Locomotive & Mach. Co. v. National Steel Castings Co., 11 L. R. A. (N. S.) 713, 155 Fed. 77.

We do not think this case comes within that class where the purchaser did not have an established business, such as is relied upon by defendants. The plaintiff here may not have had an established business in the sale or use of Eureka Gas Burners, it appearing they were of recent origin and patented, but it did have an established business or organization, ten stores or depots handling oil well and refinery supplies, located in Oklahoma, Texas, and Kansas, through which it sold gas burners, and by the contract involved surrendered its right to handle any gas burner except the Eureka, and thereby suffered a detriment, which under the law is classed as a consideration. The parties contemplated the promotion and extension of sales of the burner to the oil trade and provided in the contract that the plaintiff should make an initial purchase of fifty burners to be distributed to its various store points, and agreed to place stocks of burners at points in such territory as the parties might agree upon, seller to furnish a man to introduce the burner to the trade in that territory, and the parties were to bear equally the expense of advertising the burner at the Tulsa Oil Exposition.

In the body of the opinion in the case of N. Y. Central Iron Works v. U. S. Radiator Co., 174 N. Y. 331, 66 N. Y. 967-68, in sustaining the validity of a contract which provided the vendor should furnish all the goods of a certain kind that the vendee should require, it is said:

"The defendant bound the plaintiff to deal exclusively in goods to be ordered from it under the contract, and to enlarge and develop the market for the defendant's wares so far as possible. Hence the parties left the contract open and indefinite as to the quantity of goods that the plaintiff might order from time to time."

"Where a contract provided for a purchase and sale of one of each size of each style of patterns produced and placed on the market for a period of two years by an established concern engaged in production of such patterns, to be delivered monthly and paid for at a definite price, such contract was not void for uncertainty because indefinite as to the number to be furnished, since the number thereof was necessarily dependent on the operation of the seller's business, and such indefiniteness was within the contemplation of the parties and a part of the contract." McCall v. Icks (Wis.) 83 N. W. 300.

It is said in the syllabus of Texas Co. v. Pensacola Maritime Corporation (C. C. A.) 279 Fed. 19, 24 A. L. R. 1336:

"A contract for the sale of plaintiff's requirements of oil for resale to ships does not lack mutuality, even though the plaintiff had as yet no established business for the sale of fuel oil for ships, and especially where plaintiff did have an established business in the sale of coal as a fuel for ships, since plaintiff's agreement to buy its oil only from defendant was a detriment to it sufficient to support the contract."

—and in the body of the opinion:

"The obligation to take all oil needed in its business of furnishing bunker oil to ships. which business, though new, was being actively pressed, was as binding an obligation as if the promisor had been previously engaged in the business of furnishing such bunker oil. While the results of such business were not apparently as certain, the obligation was as fixed, and furnished a sufficient consideration for the promise to sell to it such oil. * * *

"It seems to us that the objection does not arise on the validity of the contract, but would relate alone to the possible ability to prove specific damages in case of a breach. * * * Even a promise to buy or sell only as much as the promisor chooses is a sufficient consideration, when coupled with the agreement that whatever the buyer or seller chooses to buy or sell he will buy from or sell to the promisee."

This court in the case of Ash v. Chas. F. Noble Oil & Gas Co., 96 Okla. 211, 223 Pac. 175, a case which involved a contract wherein the plaintiff had been granted the exclusive right to sell the products of a refinery for a definite term, held the contract mutual and valid, and stated in the body of the opinion in referring to damages therein:

"The great weight of modern authority appears to hold that the rule that damages which are uncertain or contingent cannot be recovered for breach of contract does not apply as to the uncertainty of the amount, but only to uncertainty as to whether any damage or benefit has resulted in the breach of the contract involved."

From a consideration of the entire contract in the instant case, we are of the opinion, and hold, that the contract required the plaintiff, the buyer, to purchase, sell, and distribute Eureka Gas Burners to the exclusion of any other gas burner. The clause:

"It is further agreed that should the parties of the second part adopt any other burner giving it preference over the Eureka Burner, this contract becomes null and void at the election of the parties of the first part"

—in the contract is but a statement of the law generally applicable to contracts, and does not authorize the plaintiff to terminate the contract when it may desire; it will be observed that the clause concludes with the words, "at the election of the parties of the first part."

From an examination and consideration of the entire record in this case, we are of the opinion that the law applicable thereto does not warrant a reversal of the judgment or a cancellation of the contract involved upon the ground that the contract is without consideration or that its terms have been violated by the adoption or preference of a different burner.

We are unable to say that the finding and judgment of the trial court is against the clear weight of the evidence; therefore, under the well-established rule in equity cases, the judgment of the trial court is affirmed.

BENNETT, TEEHEE, REID, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 2 R. C. L. p. 203; 1 R. C. L. Supp. p. 442; 4 R. C. L. Supp. p. 90; 5 R. C. L. Supp. p. 81; 6 R.C.L.Supp. p. 73. (2) 14 A. L. R. 1312; 24 R. C. L. p. 1352; 6 R. C. L. Supp. p. 687; 2 R. C. L. Supp. p. 182; 4 R. C. L. Supp. p. 434; 5 R. C. L. Supp. p. 363; 6 R. C. L. Supp. p. 405. See "Appeal and Error," 4 C. J. §2855, p. 885, n. 41. "Contracts," 13 C. J. §180, p. 334, n. 37.