■ John L. Flynn, J.
Application is here made in separate proceeding’s commenced by petitioner against each respondent for orders directing that arbitration proceed pursuant to contract entered into by the parties. The issues in each case are identical and accordingly the two applications will be considered together.
A single answer on behalf of both respondents was heretofore filed, and, following oral argument, date was fixed for the exchange and filing of memoranda of law. Respondents thereafter moved for leave to amend their answer and for an extension of the time limited for the filing of memoranda. Such motion is now disposed of as follows: The motion in branch to amend is granted and the proffered answer annexed to the moving papers will be deemed the amended answer of respondents. The motion in branch for an extension of time within which to submit memoranda is denied. In point of fact, extensive memoranda have been exchanged and submitted and no useful purpose will ■be served by delaying a disposition of the principal applications consequent upon a further exchange of memoranda.
Petitioner is chairman of an unincorporated association known as East Coast Colombia Conference, a voluntary association of steamship lines operating between Atlantic and Gulf ports of the United States and ports on the east coast of Colombia. Since 1944 the Conference has offered to shippers what has been called a “ dual rate contract arrangement ” or “ exclusive patronage contract ” whereby a shipper who elects to become a signer undertakes to ship exclusively by vessels of the Conference members and in return receives a lower freight rate than is afforded to nonsigners. Such contract was *920 executed by respondent Ckemoleum Corporation in 1952 and by respondent Axon Corporation in 1958. The contracts provide for automatic renewal from year to year unless terminated by prior written notice of cancellation effective on expiration of the, yearly term, and each contains an arbitration provision reading as follows: “ Any and-every dispute arising out of, or relating to, this agreement or the breach hereof shall be settled by arbitration in New York, N. Y. under the laws of the State of New York and the Arbitration Buies of the Chamber of Commerce of the State of New York.”
Petitioner charges each respondent with breach of the contract in having shipped over -lines not members of the Conference, and claiming damage, demands that arbitration proceed in accordance with the provisions of the agreement. This is resisted by respondents upon various grounds hereafter considered.
Preliminarily, respondents allege as a first defense that ‘ ‘ Petitioner lacks legal capacity to institute this proceeding as he is neither president nor treasurer of the East Coast Colombia Conference.” The defense is without merit. It appears .that East Coast Colombia Conference does not have any officer denominated ‘1 president ” or “ treasurer ’ ’. However it does have a presiding officer denominated “ Chairman ”, who exercises all the functions usually exercised by a president and who in fact is the chief executive officer of the association. The term “chairman”, in this instance, is equivalent to the term ‘ ‘ president ’ and I hold there is a sufficient compliance with section 12 of the General Associations Law (Hatheway v. American Mining Stock Exch., 31 Hun 575; New York Bd. of Fire Underwriters v. Whipple & Co., 36 App. Div. 49; Matter of Burns, 200 Misc. 355).
Bespondents contend ‘ ‘ the alleged agreement is illegal, void and unenforceable by reason of duress ”. There is no showing of evidentiary facts and the bald assertion of duress standing alone is insufficient to raise an issue as to the existence of a valid contract (Civ. Prac. Act, § 1450; Matter of Minkin [Halperin], 279 App. Div. 226, affd. 304 N. Y. 617; MacNamara. v. Doubleday, 270 App. Div. 645; Manno v. Mutual Benefit Health & Acc. Assn., 18 Misc 2d 80).
Bespondents also contend that the agreement lacks ‘ ‘ mutuality ” and “ consideration ”, that the Conference members were not obligated by the contract to accept any shipment whatever. I find no merit in this contention. There is clear expression in the agreement of the promise of the shipper to *921 ship during the term of the contract exclusively by vessels of the Conference members, and an equally clear expression of the reciprocal promise of the Conference to afford the shipper the benefit of a lower freight rate than would be afforded to nonsigners.
Plainly implied and inherent in the contract is a promise to provide carriage for such shipments as may be tendered if space be available. “ Every detail of a contract need not be specifically expressed. The law takes a broader view of what must be contained in a contract. All the circumstances which go to make up this contract are instinct with an obligation to purchase even though it may be imperfectly expressed.” (Ehrenworth v. Stuhmer & Co., 229 N. Y. 210, 219.) I conclude, therefore, the agreements lack neither mutuality nor consideration (Ehrenworth v. Stuhmer & Co., supra; Edison Elec. Illumination Co. v. Thacher, 229 N. Y. 172; Wood v. Duff-Gordon. 222 N. Y. 88).
It is further claimed “ the Federal courts are clothed with exclusive jurisdiction pursuant to the Constitution of the United States ” and that the remedy of arbitration “ is not applicable to disputes within the admiralty' and maritime jurisdiction of the United States courts.” In urging this contention respondents rest upon the holding of the Court of Appeals of this State in Matter of Red Cross Line v. Atlantic Fruit Co. (233 N. Y. 373). However, on appeal to the Supreme Court of the United States that holding was reversed (264 U. S. 109). There Mr. Justice Brandéis, speaking for the court, said (p. 124): “A State may not provide a remedy in rem for any cause of action within the admiralty jurisdiction. The Hine v. Trevor, 4 Wall. 555; The Glide, 167 U. S. 606. But otherwise, the State, having concurrent jurisdiction, is free to adopt such remedies, and to attach to them such incidents, as it sees fit. New York, therefore, had the power to confer upon its courts the authority to compel parties within its jurisdiction to specifically perform an agreement for arbitration, which is valid by the general maritime law, as well as by the law of the State, which is contained in a contract made in New York and which, by its terms, is to be performed there.”
A similar contention was advanced in Matter of First Nat. Oil Corp. (Arrieta) (2 Misc 2d 225, affd. 2 A D 2d 590, appeal dismissed 2 N Y 2d 992), wherein it was said (p. 228): “ the respondents contend that only the District Court of the United States for the district wherein the arbitration was held has jurisdiction. It. is clear, however, that by virtue of the saving *922 to suitors clause contained in section 1333 of title 28 of the United States Code, that this court has concurrent jurisdiction with the United States courts in arbitration proceedings, notwithstanding that they arise out of so-called maritime contracts (See, also, Matter of Cocotos S. S. of Panama, S. A. v. Hugo Neu Corp., 178 F. Supp. 491, to the same effect.)
The contracts at bar were made in New York and the arbitration provision therein contained provides for arbitration 11 in New York, N. Y., under the laws of the State of New York, and the Arbitration Rules of the Chamber of Commerce of the State of New York”. The making of a contract for arbitration which provides for arbitration in this State is deemed a consent of the parties to the jurisdiction of the Supreme Court of this State to enforce the contract (Civ. Prac. Act, § 1450). I conclude, therefore, that these proceedings are properly before this court (Matter of Stevenson & Co. v. International Coal Corp., 15 Misc 2d 904).
It is also argued this court is without jurisdiction to act, since respondents have heretofore filed a petition with the Federal Maritime Board for a declaratory order with respect to the contracts at bar. It is said the Federal Maritime Board thereby acquired exclusive primary jurisdiction and ‘ ‘ petitioner has failed to exhaust his administrative remedies, a necessary condition precedent to instituting this proceeding”. I am not impressed with this argument. No authority in its support has come to my attention. I presume the exhaustion of remedies adverted to has reference to a disposition by the board of the petition filed by respondents. It appears, however, by an order dated August 18, 1960 the Federal Maritime Board refused to entertain the petition.
I come now to the nub of the case. Dual rate system-exclusive patronage contracts have been in use for many years in international water transportation. They were designed to provide American carriers with a basis for meeting the competition of foreign carriers. 11 In view of the prevailing characteristics of the industry, it early became apparent that it would, on the whole, be in the national interest to tolerate some practices of steamship lines that in other industries would be deemed inadmissible ”. (Maritime Bd. v. Isbrandtsen Co., 356 U. S. 481, 503.) By the Shipping Act of 1960 Congress excepted such arrangements approved by the Federal Maritime Board from the prohibition of the antitrust laws.
The East Coast Colombia Conference was formed in 1943 and the contractual arrangement therefor was filed with and *923 received the approval of the Federal Maritime Board. Since 1944 the Conference has offered to shippers an exclusive patronage-dual-rate contract providing lower freight rates for contract signers. Such contract form was filed with the Federal Maritime Board in 1952, together with a descriptive statement of its purpose and terms. It does not appear that it thereafter was affirmatively approved by the board. On the other hand, it was never disapproved.
Up to 1954 approval by the board of the exclusive patronage-dual-rate contracts offered to shippers apparently was not generally considered necessary. In any event, in that year the United States Court of Appeals for the District of Columbia Circuit (Isbrandtsen Co. v. United States, 211 F. 2d 51) held that section 15 of the Shipping Act of 1916 (U. S. Code, tit. 46, § 814) required proposed dual rate agreements between shippers and the Conference to be approved by the board before they could become operative. Subsequently, that court, considering another exclusive patronage-dual rate contract (Isbrandtsen Co. v. United States, 239 F. 2d 933), determined that such contract was unlawful per se and could not be approved by the Federal Maritime Board. Upon appeal to the Supreme Court of the United States (Federal Maritime Bd. v. Isbrandtsen Co., 356 U. S. 481) by decision rendered May 19, 1958, the disposition of the United States Court of Appeals was affirmed, the Supreme Court holding the Shipping Act strikes down a dual-rate system employed as a predatory device.
These adjudications invalidating practices theretofore in general use in shipping circles had a profound impact upon the industry. Action by Congress quickly followed. On August 12, 1958, Public Law 85-626 (58 U. S. Stat. 574) was enacted amending section 14 of the Shipping Act (U. S. Code, tit. 46, § 812) by inserting at the end thereof the following: “ Provided, That nothing in this section or elsewhere in this Act [chapter], shall be construed or applied to forbid or make unlawful any dual rate contract arrangement in use by the members of a conference on May 19,1958, which conference is organized under an agreement approved under section 15 [814] of this Act [title] by the regulatory body administering this Act [chapter], unless and until such regulatory body disapproves, cancels, or modifies such arrangement in accordance with the standards set forth in section 15 [814] of this Act [title]. The term 6 dual rate contract arrangement ’ as used herein means a practice whereby a conference establishes tariffs of rates at two levels the lower of which will be charged to merchants who agree to *924 ship their cargoes on vessels of members of the conference only and the higher of which shall be charged to merchants who do not so agree.”
The legislative history of this amendment makes plain the intention of Congress, by this legislation, to provide the industry with a moratorium during which Congress might study and investigate, to the end that appropriate legislation might thereafter be enacted. Petitioner asserts the amendment preserves the validity of the dual-rate contracts now under consideration. Respondents argue to the contrary and contend the amendment was intended to do no more than preserve the status quo that had been disturbed by the adjudication of the Supreme Court of the United States in the later Isbrandtsen case; that it was not the intention of Congress to limit the effects of the adjudication in the earlier Isbrandtsen case, and, as a consequence, the amendment must be deemed to include the qualification that exclusive patronage-dual-rate contracts must, in any event, have been approved by the Federal Maritime Board to acquire validity.
I reach a different conclusion. Respondents’ contention as to the meaning of the amendment works a distortion in the language employed by Congress which plainly states “unless and until such regulatory body disapproves, cancels or modifies such arrangement in accordance with the standards set forth in section 15 of this Act.” It would have been a simple matter for Congress, if it desired to do so, to insert appropriate language in the amendment limiting the validity of the dual-rate contracts to those actually approved by the board. It is incredible to assume that Congress was wholly unaware of the earlier Isbrandtsen case when it enacted the legislation. I conclude Congress neither intended nor desired to limit the effect of the amendment in the manner suggested by respondents.
Clearly the dual-rate contract arrangement of the East Coast Colombia Conference was in use by members of the Conference on May 19, 1958. It is equally clear the Conference was one organized under an agreement approved under section 15 of the Shipping Act by the regulatory body administering the act. Concededly, that regulatory body has not disapproved, cancelled or modified such arrangement. The contracts executed by petitioner and respondents are therefore valid and I so hold.
Accordingly, the applications are granted and it is directed that arbitration proceed in accordance with the respective agreements executed by respondents.