Owen McGivern, J.
Petitioner moves against respondent for an order directing that arbitration proceed pursuant to contract entered into between the parties on March 4, 1953. Respondent in an affirmative defense set forth in its answer alleged that the “ petition fails to state facts sufficient to institute a course of action ” and moves to dismiss on that ground.
Petitioner charges respondent with breach of what has been called a “ dual rate contract arrangement” or “ exclusive patronage contract ” whereby a shipper such as respondent undertakes to ship exclusively by vessels which are members of a conference constituting a voluntary association, which in this case is Atlantic and Gulf/West Coast of South America *926 Conference, the formation of which was approved on March 9, .1934 by the United States Shipping Board Bureau, predecessor of the Federal Maritime Board. The contract provided for automatic renewal from year to year unless prior written notice of cancellation was given not later than May 1 of any current year.
The agreement contained the following provision: ‘ ‘ Any and every dispute arising out of, or relating to, this agreement or the breach hereof shall be settled by arbitration in New York, N. Y. under the laws of the State of New York and the Arbitration Rules of the Chamber of Commerce of the State of New York.”
Respondent concedes the making of the contract and its violation of that provision of the agreement which required it to offer to member lines of the Conference, exclusively, all cargo for shipment from United States Atlantic and Gulf ports to certain west coast ports of South America, which constitutes the basis of petitioner’s demand for arbitration of its claimed damages. In support of its cross motion it, at the outset, challenges the capacity of the chairman of the Conference to bring on this proceeding under section 12 of the General Associations Law which provides that, “ An action or special proceeding may be maintained, by the president or treasurer of an unincorporated association ”. In the second paragraph of the petition' it is alleged that the Conference has no ‘1 president ’ ’ or “ treasurer ” but all the. functions usually exercised by such officers are exercised by petitioner as chairman. The narrow construction of the statute relied upon by respondent has been rejected and this challenge lacks merit. (Hatheway v. American Mining Stock Exch., 31 Hun 575 [First Dept., 1884]; New York Bd. of Fire Underwriters v. Whipple & Co., 36 App. Div. 49 [First Dept., 1898]; Matter of Burns v. Wiltse, 200 Misc. 355 [Supreme Ct., Spec. Term, Jefferson County, 1951].)
Respondent’s attack upon the validity of the contract because of an alleged “lack of mutuality and consideration ”, in that it does not specifically impose the duty upon members of the Conference to accept any shipments also lacks merit. There is plainly implied and inherent in the contract a promise to provide carriage for such shipments if space is available. (Ehrenworth v. Stuhmer & Co., 229 N. Y. 210; Wood v. Duff-Gordon, 222 N. Y. 88; Mandel v. Liebman, 303 N. Y. 88.) And there is contained in the agreement a reciprocal promise of the Conference to grant respondent the benefit of a lower freight rate than would be afforded to nonsigners in consideration of its agreement to ship during the term of the contract exclusively by *927 vessels of the Conference members. Respondent’s contention loses much of its force and becomes quite untenable when it is noted that prior to its present assertion of lack of mutuality and consideration, it shipped upwards of several million pounds of cargo upon vessels of the Conference over a period of many years, enjoying thereby the advantage of lower rates.
Respondent further asserts that the agreement entered into is “ illegal, void and unenforceable by reason of ‘ economic coercion and duress ’ exercised by the Conference which allegedly enjoys a monopoly of ocean carriage of freight between United States, Atlantic and Gulf ports and West Coast ports of South America, ‘ in violation of the Anti-Trust Laws ’ ’ ’. These allegations, unsupported by other evidentiary facts adequate in law to support the claim of “ duress ” and “ coercion ”, are essentially conclusions of law insufficient to raise the existence of an issue as to existence of a valid contract. (Civ. Prac. Act, § 1450; United States v. Bethlehem Steel Corp., 315 U. S. 289; Oleet v. Pennsylvania Exch. Bank, 285 App. Div. 411, 414-415; Matter of Affiliated Coat & Apron Supply Co., 153 N. Y. S. 2d 970 [Supreme Ct., N. Y. County, 1956], affd. 2 A D 2d 671; Matter of Minkin [Halperin], 279 App. Div. 226, affd. 304 N. Y. 617; MacNamara v. Doubleday, 270 App. Div. 645; Manno v. Mutual Benefit Health & Acc. Assn., 18 Misc 2d 80 [Supreme Ct., Spec. Term, Queens County].) The allegation of “ economic coercion” based upon an alleged unlawful monopoly is lack-
ing in force in view of the circumstances and apparent state of the law existing at the time the contract was entered into, as reflected in the decisions and language of the Supreme Court in United States Nav. Co. v. Cunard S. S. Co. (284 U. S. 474 [1932]); Swayne & Hoyt v. United States (300 U. S. 297 [1937]), and in Far East Conference v. United States (342 U. S. 570 [1952]), which controlled the views of the shipping industry and caused it to assume and accept the legality of a “ dual rate contract arrangement ’ ’ prior to the cloud cast upon existing exclusive patronage contracts by the decision of the Supreme Court in Maritime Bd. v. Isbrandtsen Co. on March 19, 1958 (356 U. S. 481, 499) which declared unlawful those dual-rate systems which “ are employed as predatory devices ”.
In any event, any infirmity which may have existed in the contract was cured by the enactment on August 12, 1958 of Public Law 85-626 (72 U. S. Stat. 574) which amended section 14 of the Shipping Act of 1916 (U. S. Code, tit. 46, § 812).
The dual-rate contract arrangement of petitioner was in existence on May 19, 1958 and it is conceded that the Conference Avas one organized under an agreement approved under *928 section 15 of the Shipping Act (U. S. Code, tit. 46, § 814) by the regulatory body administering the act. Under the circumstances, in the absence of any evidence that the regulatory body has disapproved, cancelled, or modified the dual-rate contract form theretofore filed with it on .February 26, 1953 by petitioner in compliance with the regulatory body’s General Order 76, directing it to supply complete information as to the dual-rate contract arrangement then in force, this court must find the contract executed by petitioner and respondent valid.
Respondent argues that Congress in enacting Public Law 85-626 intended to validate only those arrangements in existence on May 19, 1958, which the regulatory body has affirmatively approved, basing its argument upon the decision rendered in an earlier Isbrandtsen case in 1954 which held that such dual-rate agreements required for their validity the approval of the regulatory body under section 15 of the Shipping Act and that until approved, the agreement was subject to the operation of the antitrust laws, under which price-fixing arrangements were illegal per se. (Isbrandtsen Co. v. United States, 211 F 2d 51, cert. denied 347 U. S. 990.)
This argument was rejected in a recent decision of Mr. Justice Johit L. Flyjstit (Matter of Pasch [Chemoleum Corp.], 26 Misc 2d 918).
Even though such dual-rate arrangements might otherwise violate the antitrust laws, Congress has expressed the circumstances under which they were to be deemed appropriate for the effectuation of national policy in respect of the international ocean transportation industry, and the Federal Maritime Board is not so bound by the antitrust laws that it must permit them to overbear what it finds to be in the public interest. (39 U. S. Stat. 733, as amd.; U. S. Code, tit. 46, § 814.)
It is further asserted by respondent that the controversy which is the subject of this proceeding falls within the purview of the Shipping Act (U. S. Code, tit. 46, § 801 et seq.) and in consequence “ the alleged wrongs which Petitioner seeks to have arbitrated are matters regulated by that statute, and therefore fall within the exclusive primary jurisdiction of the Federal Maritime Board ” and that the arbitration clause in the disputed contract ‘ ‘ constitutes an unenforceable waiver of the rights of the shipper under said act in that it constitutes an unenforceable ouster of the jurisdiction of the Federal Maritime Commission and of the courts ”. There is no merit to this contention and this court has the power to compel arbitration in accordance with the agreement - entered into. (Red Cross Line v. Atlantic Fruit Co., 264 U. S. 109; Matter of First Nat. *929 Oil Corp. [Arrieta], 2 Misc 2d 225, affd. 2 A D 2d 590, appeal dismissed 2 N Y 2d 992; Matter of Cocotos S. S. of Panama, S. A. v. Hugo Neu Corp., 178 F. Supp. 491 [U. S. Dist. Ct., S. D. N. Y.]; Matter of Pasch [Chemoleum Corp.], supra.)
The final challenge made to the validity of the contract is set forth in respondent’s sixth affirmative defense, which asserts that paragraph 7 (a) of the contract wMch provides for liquidated damages was in fact an unlawful penalty and forfeiture and unenforcible. Even if this court was to reach the conclusion that this provision was in fact an unlawful penalty such conclusion would not constitute sufficient reason for the denial of petitioner’s motion to compel arbitration. (See Winkelman v. Winkelman, 208 App. Div. 68 [First Dept., 1924]; Downtown Harvard Lunch Club v. Racso, Inc., 201 Misc. 1087, 1091 [Supreme Ct., N. Y. County, 1951].)
Under section 1450 of the Civil Practice Act, only two issues may be tried in a proceeding of this kind, (1) whether an agreement to arbitrate was made, and (2) whether there was a failure to arbitrate. This court finds that a valid agreement to arbitrate was made and that respondent has refused to proceed to arbitration. Every other issue in the proceeding, whether of fact or law, and whether raised by denial or defense is for the arbitrators exclusively. (Matter of Carey [Westinghouse Elec. Corp.], 6 A D 2d 582 [First Dept., 1958]; Matter of Lipman [Haeuser Shellac Co.], 263 App. Div. 880, affd. 289 N. Y. 76 [1942].)
Petitioner’s motion to compel arbitration is granted and the cross motion is denied.