PENNSYLVANIA CO. v. LAKE ERIE, B. G. & N. RY. CO.

(Circuit Court, N. D. Ohio, W. D. August 23, 1905.)

No. 1,930.

1. INJUNCTION—INTERFERENCE WITH PROPERTY—SUIT BY LESSEE OF RAILROAD.
   A lessee of a railroad has an interest therein which entitles it to prevent by legal process any illegal interference with its enjoyment of the leased property, and may maintain a suit in a federal court to enjoin an unauthorized crossing of the track by that of another company, a citizen of another state, although the lessor may be a citizen of the same state as the defendant.

2. STREET RAILROADS—RIGHT TO CROSS TRACKS OF STEAM ROAD—LAWS OF OHIO.
   Where a company has obtained the right from the proper authorities of a village in Ohio to construct a street railroad upon a street it cannot be enjoined by a steam railroad company whose road crosses such street from crossing such road with its tracks at grade; the steam railroad company itself having no right in the street, except subject to such proper use of it for street purposes as may be authorized by the municipality in the exercise of the powers given by statute, and no proceedings being required or provided for by the statutes of the state with respect to such crossings.

   [Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Street Railroads, § 114.]

In Equity. On motion for preliminary injunction.

Marshall & Fraser, for complainant.

James & Kelley, for defendant.

TAYLER, District Judge. The Pennsylvania Company, a corporation of the state of Pennsylvania, being the lessee of and operating a line of railroad through the village of Woodville, Sandusky county, Ohio, filed its bill, alleging that the defendant company was a corporation authorized to construct a railroad, operated by electricity or other motive power, through Wood and Sandusky counties; that the defendant company seeks to install a grade crossing over the line operated by complainant at Woodville; and that the defendant has no right to so install a grade crossing without resort to appropriation proceedings, where there has been a failure to agree with complainant as to the terms of such crossing. A restraining order was issued ex parte on the filing of the bill, and the case now comes up on the answer of the defendant and the affidavits filed by the parties on the question as to whether the restraining order should be continued.

A preliminary question of jurisdiction arises on the claim that, as the railroad is owned by an Ohio corporation, the complainant cannot prosecute this action. As the complainant is lessee of the road, its interest in the property is such as to give it the right to prevent by judicial process any illegal interference with its enjoyment of the leased property, and this right it may enforce by injunction.

It appears from the proof that the defendants have received from the council of the village of Woodville authority to construct a street railroad along Water street, which includes the point where the tracks of complainant cross that street; and the question now presented is whether the defendant, without resorting to appropriation proceedings, possesses the right to put in crossing frogs of the kind required by section 2503, Rev. St. Ohio, 1906. I think there can be no doubt that the defendant possesses this right, and I think that one would look in vain for any authority in the defendant to prosecute any proceeding looking to the appropriation of a right to cross the tracks of a steam railroad in a municipality. Indeed, until the passage of the law of April 7, 1904, street railroads did not possess the right of eminent domain at all, and without entering into a discussion as to the effect of that act of April 7, 1904, on proceedings of this character, it is sufficient to say that it does not in any respect enlarge the right of a street railroad to obtain a crossing within a municipal corporation over the tracks of a steam railroad company.

But it is contended that the defendant is not a street railroad company, and that the railroad which it is constructing in the village of Woodville is not a street railroad. I do not think that this question is open to discussion. The council of the village of Woodville, in the manner provided by law, has authorized the construction by the defendant company of a street railroad along Water street and over a point where the complainant's railroad crosses that street. This, it seems to me, is conclusive upon the question as to what kind of a railroad the defendant proposes to construct. If it constructs some other kind of a railroad, or puts the railroad constructed to some other

use than that which the law and the ordinance of the village council permit it, doubtless a citizen or property owner affected by this misuse of a right will find ample remedy in the courts. The dominion which the state has delegated to municipalities over streets is so large as to leave no uncertainty as to the effect to be given to the right granted by the municipal authorities to a street railroad to operate its line on a street of the village.

Nor is this all to be said on the question presented. If it be said that the defendant's railroad is not a street railroad, and it is therefore without authority to cross the tracks of the complainant within the village of Woodville, I do not know how, if it is not a street railroad, it can acquire that right. So far as I have been able to discover, the rights of so-called interurban railroads, as respects the subject of appropriation, are determined by section 3443–10; but the right granted by that section can only be exercised outside of municipalities. By the act of April 25, 1904 (97 Ohio Laws, p. 537), provision was made for the method by which a steam railroad might cross the track of another steam railroad within the corporate limits of a city or village. The defendant company is not a steam railroad company, and therefore that act has no application here. The act of April 25, 1904 (97 Ohio Laws, p. 548), provides for the manner in which, outside the corporate limits of a city or village, the track of any kind of a railroad company may cross the track of another railroad company. These are the only laws pertinent to the subject under inquiry.

Complainant's bill assumes the possession by complainant of a right in the street which in law it cannot possess. The bill alleges that the defendant is about to enter upon complainant's "right of way." In the sense in which this term is used in the bill, the complainant has no right of way in the street; that is, it has no tangible property therein. True, it has in strictness a right of way across the street; but this right is of an intangible nature. It has no more substance than the right of way over a street possessed by a pedestrian. So that to say that the defendant is about to enter upon complainant's "right of way," meaning the right of way it possesses across the street, is to say that the defendant is about to do what any and everybody has a right to do at all times, subject only to the movement of complainant's trains. What the defendant proposes to do is to introduce in the public highway, at the point where complainant's tracks cross it, another public use thereof, under authority of the municipal legislation necessary in such cases. The complainant has no property in the street, and none on it except a few ties and rails. The disturbance of these for the purpose of suiting them to the new use to be made of the public highway is necessary, and results in no invasion of complainant's rights.

But the right to put in crossing frogs does not carry with it the right to change the grade of the railroad. On the state of the case as it is now presented, the frogs and crossing must be so put in as not to disturb the present grade of complainant's track. The restraining order heretofore allowed will therefore be dissolved, and the injunction prayed for denied. An order may be entered accordingly.