Oscar Schlegel Manufacturing Company, Respondent, *v.* Peter Cooper's Glue Factory, Appellant.

First Department December 19, 1919.

Contracts — mutuality — contract of manufacturer to fill jobber's " requirements " for one year at fixed price — right of manufacturer to arbitrarily limit amount — liability for failure to fill orders secured by jobber.

A contract by the defendant, a manufacturer of glue, to fill the " requirements " of the plaintiff, a jobber, for one year at a fixed price, does not lack mutuality or become unenforcible because of a mere uncertainty as to the amount which might be required to be furnished where it appears that the defendant well knew that it was to fill orders to be secured by the plaintiff as a jobber, and that the term " requirements " was well known to the defendant, as it had transacted business with the plaintiff under similar contracts for several years, and, furthermore, that the plaintiff was under obligation to order from the defendant all of the glue of the quality stated in the contract which it sold to its customers.

The defendant neither notified the plaintiff to cease taking orders nor repudiated the contract and it had no right to arbitrarily limit the amount

which the plaintiff might receive thereunder, and the defendant was, therefore, liable for all damages arising by failure on its part to fill all orders taken in good faith.

PAGE, J., and CLARKE, P. J., dissented, with opinion.

APPEAL by the defendant, Peter Cooper's Glue Factory, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 19th day of September, 1918, upon the decision of the court after a trial before the court without a jury.

*Ralph S. Kent* of counsel [*Kent, Cummings & Smith,* attorneys], for the appellant.

*Hugart F. Norman* of counsel [*Samuel J. Reid* with him on the brief], for the respondent.

DOWLING, J.:

This action was brought to recover damages claimed to have been sustained by plaintiff pursuant to defendant's breach of a contract in writing between the parties as follows:

" PETER COOPER'S GLUE FACTORY
' GOWANDA, NEW YORK, *December 9th,* 1915.
" Messrs. OSCAR SCHLEGEL MFG. CO.,
    " 111 East 12th Street,
        " New York City, N. Y.:
    " GENTLEMEN.— We are instructed by our Mr. von Schuckmann to enter your contract for your requirements of ' Special BB ' glue for the year 1916, price to be 9c. per lb., terms 2% 20th to 30th of month following purchase. Deliveries to be made to you as per your orders during the year and quality same as heretofore. Glue to be packed in 500 lb. or 350 lb. barrels and 100 lb. kegs, and your special Label to be carefully pasted on top, bottom and side of each barrel or keg.

" This contract is contingent upon fires, strikes, accidents and other causes beyond control of the parties hereto.

" We take great pleasure in entering this contract and assure you this continuation of your business is greatly appreciated.

" Yours very truly,
        " PETER COOPER'S GLUE FACTORY,
            " W. D. DONALDSON,

" WDD /SIJ-D.                           *Sales Manager."*

This agreement was accepted in writing by the plaintiff and concededly constitutes the contract between them. The parties entered upon its performance and deliveries were made from time to time amounting in the aggregate to 169,800 pounds or 340 barrels. For the first nine months of 1916, from January to September inclusive, plaintiff received and paid for 87½ barrels or 43,700 pounds. The average for these months was a little less than 5,000 pounds. In October, November and December, however, the plaintiff ordered an aggregate of 126,100 pounds. Between October 30, 1916, and December 26, 1916, plaintiff ordered the delivery pursuant to the contract of 79,891 pounds of glue which plaintiff needed to meet its requirements and the defendant did not deliver the same. Plaintiff in anticipation of the performance of the contract had sold 42,000 pounds of this glue and as it could no longer be bought in the open market it lost its profits on such sales. The other damage sustained by plaintiff pursuant to defendant's failure to deliver the balance of the amount ordered brought the plaintiff's damages up to a total of $6,431.28 for which it has recovered judgment.

The plaintiff was a jobber exclusively, handling glues, shellacs, paints and chemicals. It bought only for retailing to the trade and did not manufacture or use any of these articles in its own business. It sent out salesmen to solicit orders and when "BB Special Glue" was ordered by a customer a requisition covering the same would be sent to defendant who would fill the order. The plaintiff dealt in none of the glue from its own stock but filled the orders of its customers as it received them by calling upon defendant to deliver the goods under the contract between the plaintiff and defendant. Therefore, the plaintiff's requirements of Special BB Glue for the year 1916 were the amounts of orders received therefor from its customers to whom its salesmen had sold such goods. This method of doing business, and the meaning of the term "requirements" as used in the contract, were concededly well known to defendant, which had theretofore done business under the same system with the plaintiff, to which it had sold goods as far back as 1910. The contract in question is similar in general terms to the contract between the parties for the year 1915 which also

was for plaintiff's "requirements" of special bookbinders' glue, for the balance of the year from March 3, 1915, at a fixed price quoted. No question arose between the parties as to the meaning of such a contract during the year 1915 and plaintiff's requirements, evidenced by orders from its customers, were filled without question during that year. Nor did any question arise as to the meaning or validity of the contract for the year 1916, until the price for this special glue rose so high that the contract became very valuable to the plaintiff and entailed a corresponding loss of profit to the defendant which it could have made by selling the goods elsewhere. The contract price was nine cents per pound and by December, 1916, prices were quoted as high as twenty-one to twenty-five cents, and plaintiff itself had sold at the price of fifteen cents and twenty-four cents goods which it was unable to buy in the open market in order to fill its sales. For such goods as plaintiff did obtain in the open market it paid seventeen cents a pound in December, 1916, and then the quality was lower than that which defendant was to supply. Furthermore, in the month of December, 1916, no quotations whatever were available for 1917 deliveries.

Under these conditions plaintiff not unnaturally sought to reap a legitimate advantage from its contract and by soliciting the trade received orders for the last three months of 1916 which, as has been said, aggregated 126,100 pounds. In the meantime the defendant was furnished by plaintiff with requisitions for orders for 79,891 pounds of glue which it has failed to deliver under the contract, and upon the trial these requisitions were produced by the defendant upon notice and received in evidence. At no time during the receipt of these orders did the defendant repudiate the contract or disavow the same, nor did it object to, or question, the good faith of the orders. Plaintiff repeatedly demanded performance of the contract and defendant's representative with whom the original contract was made promised repeatedly as late as the month of December, 1916, to ship glue to cover the requisitions and said that the glue was on the way. Instead of repudiating the contract, the defendant undertook to place an arbitrary limitation upon the same, by saying it would give the plaintiff as a jobber ten per cent more than it had purchased during

the year 1915 or about 40,000 pounds.  But despite this the defendant never notified plaintiff to cease taking orders from its customers for delivery of this glue, nor did it ever notify plaintiff while the orders in question were being taken that it would not live up to its contract.

The defendant now claims that this contract lacked mutuality and, therefore, was unenforcible.  I do not think this contention can be sustained.  Both parties were dealing with full knowledge that the plaintiff required no glue for use in any manufacturing business of its own, but desired and agreed only to purchase such glue as it might be able to sell through its salesmen to customers.  The course of dealing between plaintiff and defendant kept defendant constantly advised of this fact and it knew that the plaintiff kept no stock of goods, but as soon as it received an order for glue it notified the defendant thereof and had the order filled by defendant. In other words, plaintiff's requirements which, under the contract, defendant was to supply for the year 1916, were its requirements for the amount of glue which during that time it might be able to sell to customers.  The recovery herein is based upon the loss which plaintiff sustained by reason of defendant's failure to fill orders which plaintiff had so obtained from customers and of which the defendant had been promptly notified.  The defendant had not protected itself against any abnormal variation in price during the year nor had it fixed any limitation upon the amount of glue which it would furnish the plaintiff, if it received orders from its customers therefor.  The only proviso in the contract which the defendant cared to insert was that the contract was contingent upon fires, strikes, accidents and other causes beyond the control of the parties.  A rising market could have been guarded against by the defendant by inserting in the contract a clause fixing the maximum amount which the plaintiff might be entitled to receive thereunder; but instead the defendant made an absolute contract at a fixed price for the entire year to deliver as much glue as plaintiff might be able to sell to customers during that period.  If the plaintiff had taken orders for this quality of glue and had failed to buy the amount to fill such orders from the defendant, the defendant could have held the plaintiff under the contract and

recovered the damages which it sustained by reason of plaintiff's failure to order such glue from the defendant. And this it could have done no matter how low the market price might have fallen during the year. Both parties acted with full knowledge of their respective methods of doing business and of the uncertain and fluctuating demand for glue which might come from plaintiff's customers and which must naturally to some extent be dependent upon the market price. They entered upon this contract with their eyes open to all the conditions then existing, or which might possibly arise, and with the intention of being mutually bound thereby. I believe that under the contract the plaintiff was bound to order from the defendant every pound of this quality of glue which it sold to its customers and that in like manner defendant was bound to supply every pound of this quality of glue which · plaintiff sold to customers and called upon the defendant to furnish. The mere uncertainty as to the amount which might be required to be furnished under the contract is no reason why it was not a mutual one nor does it make the contract unenforcible.

The court has found that the orders in question were received by plaintiff and transmitted to defendant under the contract. The plaintiff's good faith in soliciting these orders and their validity have not been successfully attacked. Having a valid and enforcible contract with the defendant, obtained without any unfair dealing on its part, but as the result of the deliberate judgment of both parties thereto, the plaintiff had a right in the absence of any notification from the defendant that it could not or would not fill all its orders to proceed legitimately in good faith to solicit orders from the trade for this quality of glue and to expect the filling of these orders by the defendant. The defendant had no right to arbitrarily limit the amount which plaintiff should receive under the contract, and it was, therefore, properly held liable for the damages which the plaintiff sustained.

The situation presented by this case is similar to that which was before the Court of Appeals in *New York Central Iron Works Co.* v. *U. S. Radiator Co.* (174 N. Y. 331). There also the parties had left the contract open and indefinite as to

the quantity of the goods that plaintiff might order from time to time. Defendant had there sought to have the contract reformed so as to call for only the usual amount of goods sold in the preceding year, as an answer to the vendee's action for damages sustained by reason of the vendor's refusal to furnish the goods called for under its orders for the second year. Judge O'BRIEN said (p. 334): " It is quite probable that this controversy originated in a circumstance which the defendant, at least, had not anticipated or provided for. After the execution of the contract there was a large advance in the market price of iron and the manufactured products of iron, and, consequently, the value and selling price of the goods covered by this contract advanced in the same or possibly in a greater proportion. The *needs* of the plaintiff could be indefinitely enlarged when the market was in such a condition as to enable it to undersell its competitors in the same business in consequence of a favorable contract with the manufacturer of the goods. If a party contracts for goods upon a rising market he is ordinarily entitled to such profits as may accrue to him by reason of a prudent or favorable contract. We cannot perceive that there is any error of law in this judgment, although the plaintiff has recovered a considerable sum in damages for the breach. The case in its general features is the same as another case which was recently before this court, where there was a similar recovery that was sustained. (*Fuller & Co.* v. *Schrenk*, 58 App. Div. 222; affd., 171 N. Y. 671.) "

The judgment appealed from should be affirmed, with costs.

MERRELL and PHILBIN, JJ., concurred; CLARKE, P. J., and PAGE, J., dissented.

PAGE, J. (dissenting):

In my opinion the alleged agreement upon which the cause of action was predicated lacked mutuality of obligation, and if the construction put upon the contract by the majority of the court be accepted the contract was too indefinite and uncertain to constitute a valid and binding contract between the parties to this action. The alleged agreement consists of the letter of the defendant to the plaintiff dated December 9, 1915, quoted

First Department, December, 1919.          [Vol. 189.

in the prevailing opinion, with the words "Accepted. Oscar Schlegel Manufacturing Company" written at the bottom. There is no consideration mentioned in the offer or acceptance, and the only consideration that could sustain it would be mutual promises of the parties. There is no agreement on the part of the plaintiff to do anything. It was not agreed that it would not buy glue of any other manufacturer. It does not agree that it will sell a pound of the glue. It does not agree to push the sale of the defendant's glue. It does not agree that it will not buy any other glue in competition with the defendant's glue. It did not obtain the exclusive right to sell the defendant's glue. There was nothing in the writings from which an obligation could be implied on the plaintiff's part to do a thing except to pay for such glue as it might purchase at the price mentioned.

The prevailing opinion correctly states that "both parties were dealing with full knowledge that the plaintiff required no glue for use in any manufacturing business of its own, but desired and agreed only to purchase such glue as it might be able to sell through its salesmen to customers." The opinion, however, further states: "If the plaintiff had taken orders for this quality of glue and had failed to buy the amount to fill such orders from the defendant, the defendant could have held the plaintiff under the contract and recovered the damages which it sustained by reason of plaintiff's failure to order such glue from the defendant." This presupposes that if the price of this quality of glue fell below nine cents a pound the plaintiff would continue to solicit the trade and take orders for this quality of glue. It was under no obligation to do so. The sale of this particular glue was not its business exclusively, nor does it appear to have been a substantial part of its business until under the stimulus of advancing prices, it made special effort to secure orders. It can well be assumed from the strenuous efforts to make a large profit at the expense of the defendant, when prices more than doubled, that if prices had fallen, effort would have been made to prevent loss by refusal to solicit or fill orders. In such an event defendant could not have recovered against the plaintiff, for the reason that the plaintiff did not agree to sell this glue, nor to push its sale. That the plaintiff had no orders and, therefore, no

requirements (accepting the interpretation of that word in the prevailing opinion) would be a complete defense.    It is an elementary principle that a contract which lacks mutuality of obligation is unenforcible, as neither party is bound.    (*Grossman v. Schenker*, 206 N. Y. 466, 468; *Cohn* v. *Levine*, 185 App. Div. 529, 531.)    The obligation of the agreement may have rested upon the defendant to sell to the plaintiff its requirements for the year 1916, but unless there was a reciprocal obligation on the plaintiff to purchase its requirements from the defendant, the agreement lacks the binding force of a contract.    This is well illustrated in the case of *Jenkins & Co.* v. *Anaheim Sugar Co.* (237 Fed. Rep. 278; revd., 247 id. 958), in which the plaintiff, a corporation transacting business as a wholesale grocer, entered into an agreement with the defendant, a corporation engaged in the business of manufacturing sugar, whereby the defendant agreed to sell to the plaintiff and the plaintiff agreed to buy from the defendant its August requirements of fine granulated sugar at a stipulated price. Ordinarily the plaintiff required 4,800 bags of sugar for the month of August, which the defendant knew.    Sugar increased in price.    The plaintiff ordered 4,800 bags of sugar but the defendant only shipped 600 bags and the plaintiff was compelled to buy the 4,200 bags at an increased price and sued to recover the difference between the contract price and that which it had been compelled to pay.    The District Court sustained a demurrer to the complaint, holding that the contract lacked mutuality in that the defendant under all circumstances could be compelled to furnish the sugar covered by the contract but that plaintiff could not be compelled to order and accept any sugar thereunder.    The Circuit Court of Appeals reversed the judgment upon the grounds, *first*, that there was a mutuality of obligation in that the defendant promised to sell and the plaintiff in terms expressed in the contract promised to buy the plaintiff's requirements for the month of August, the court saying: " The difference between a contract which does not obligate a buyer to take any specified quantity of the seller's product and one where in consideration of the seller's promise to sell the buyer promises to buy all the produce it may require for its own use for a definite period of time is substantial.    In the one instance there would be no

consideration, while in the other there would be a mutual obligation to perform which is consideration for the promise of each. A mere option to buy is readily distinguishable from an agreement to buy all to be required." (See, also, *Cohn* v. *Levine*, *supra*.) In the instant case the plaintiff merely accepted the defendant's offer to sell but did not agree to buy. The *second* ground for the decision of the Circuit Court of Appeals has a bearing upon the question which will next be considered, and that is the proper interpretation of the word " requirements." The court held that the defendant knew how plaintiff's business was conducted and that plaintiff made contracts with customers for sale and delivery under the contract with the defendant and knew what the requirements of the plaintiff would be. It is to be noted that the plaintiff only ordered the amount of its usual requirements for the month of August and brought its action to recover damages for the failure to deliver up to that amount. Therefore, at the time of entering into the contract the plaintiff's requirement was an ascertainable amount, within the knowledge of both parties.

In the prevailing opinion it is stated that " the plaintiff's requirements of Special BB Glue for the year 1916 were the amounts of orders received therefor from its customers to whom its salesmen had sold such goods." When the price rose from nine cents to twenty-four cents a pound and no quotations were obtainable for the year 1917, the opinion says: " Under these conditions plaintiff not unnaturally sought to reap a legitimate advantage from its contract and by soliciting the trade received orders for the last three months of 1916 which, as has been said, aggregated 126,100 pounds." To my mind a construction that would put the defendant entirely at the mercy of the plaintiff cannot be the proper interpretation of its meaning. And further that so interpreted the contract would be void for indefiniteness and uncertainty. If such a construction is possible then the plaintiff can speculate on the contract, and if its " requirements " are an unlimited supply, that is, all it could sell at the advanced price, it is common business experience that with a handsome profit certain, every effort would be made to reap the benefit by stimulating its sales, the plaintiff thereby securing a large profit and the defendant suffering

a commensurate loss, which would only be limited by time and the ability of the plaintiff to secure orders, and might bring certain ruin to the defendant.   We must find in the terms used in the contract the reasonable intention of the parties. It cannot be presumed that it was the intention to give such an unconscionable advantage to one party over the other. The construction given to the contract by the majority of the court has frequently been contended for by parties, but so far as I can find never adopted by the courts.   In the case of *New York Central Iron Works Co.* v. *U. S. Radiator Co.* (174 N. Y. 331, 334), relied upon in the prevailing opinion, the Court of Appeals limited the language quoted in the prevailing opinion from page 334, at page 335: " But we do not mean to assert that the plaintiff had the right under the contract to order goods to any amount.   Both parties to such a contract are bound to carry it out in a reasonable way.   The obligation of good faith and fair dealing towards each other is implied in every contract of this character.   The plaintiff could not use the contract for the purpose of speculation in a rising market since that would be a plain abuse of the rights conferred and something like a fraud upon the seller."

In some of the cases a distinction is sought to be drawn between contracts for requirements, where the subject thereof is an article incidental to the business of the purchaser or where the purchaser is under contract to resell, and where the purchaser buys to sell again as a principal part of his business (*Crane* v. *C. Crane & Co.*, 105 Fed. Rep. 869), the theory being that the amount in one case is made certain or capable of an approximation to certainty as to the requirements by reference to a standard or measure, while in the latter there is no such standard or measure by which the amount of the requirements could even be approximated in advance and, therefore, the contract is too indefinite and uncertain to be enforcible.

The question, as I understand it, is not dependent for its solution upon the character of the business of the purchaser, but rather whether there is anything whereby the very indefinite and uncertain word " requirements " can be made approximately definite and certain — something within the knowledge of both parties, so that their minds met in a

mutual understanding of the limit of the quantity to be furnished under the contract. Where a purchaser, to the knowledge of the seller, has entered into a contract for a resale of the goods purchased, the amount called for by the contract of resale would be the measure of the requirements of the purchaser's contract. (*Shipman* v. *Straitsville Mining Co.,* 158 U. S. 356, 362.) Where the purchaser contracts for his requirements of a thing incidental to the business carried on by him, his reasonable needs for the particular article can be approximately arrived at by a consideration of the proportion of the requirements incidental to the main business in which it was employed. For example, to furnish the coal for certain steam vessels for a year (*Wells* v. *Alexandre,* 130 N. Y. 642, 645), or all the cans needed in a canning factory (*E. G. Dailey Co.* v. *Clark Can Co.,* 128 Mich. 591), or all the lubricating oil for its own use (*Manhattan Oil Co.* v. *Richardson Lubricating Co.,* 113 Fed. Rep. 923). In all such cases a limit to the quantity is fixed at the legitimate needs of the particular article in carrying on the purchaser's main business. While this amount is uncertain it is capable of an approximately accurate forecast.

Where a contract is made by a jobber or wholesale dealer for goods that he is to sell, but for which he has no present contract of resale, and the contract is for his requirements, it must mean for his regular and ordinary business purposes. In the case of *Jenkins Co.* v. *Anaheim Sugar Co.* (*supra*) the plaintiff only demanded that the defendant should furnish the amount that in previous years had been sold during the period covered by the contract. This would be one test, and if the amount demanded under the contract was greatly in excess of that amount, the question would be whether the orders were in excess of the purchaser's reasonable needs and were justified by the conditions of the business. (*New York Central Iron Works Co.* v. *U. S. Radiator Co., supra,* 335.) While in such a case the amount of the purchaser's requirements is uncertain, and more difficult of forecast than in the case where the article was for incidental use, yet it can be determined with reasonable approximation. Therefore, such a contract is not void for uncertainty. But the purchaser is limited to demand such as he requires to meet orders received

in the ordinary and usual course of dealing. He must carry out the contract in a reasonable way with regard to the obligations of good faith and fair dealing which are implied in the contract. It was, therefore, competent for the defendant to prove that the plaintiff was not acting reasonably or in good faith, but using the contract for a purpose not within the contemplation of the parties, for a speculative as distinguished from an ordinary and regular business purpose. (*New York Central Iron Works Co.* v. *U. S. Radiator Co., supra.*) Ordinarily, the lack of good faith and the fact that the orders were not received in the ordinary and usual course of business would be a defense and the defendant would be required to plead the facts to raise this defense. In the instant case the plaintiff's attorney on the trial specifically waived the objection that the defense was not pleaded. It is competent for parties by agreement to litigate a question irrespective of the pleadings. When objection is not made at the trial that the evidence is not within the issues, the court may give such judgment as is warranted by the facts proved.

The facts in this case show, conclusively, in my opinion, that the plaintiff was not acting in good faith but was using the contract speculatively and not as was contemplated by the parties. The plaintiff had been buying this quality of glue from the defendant for several years. In November, 1910, a contract was made for 100 barrels, or 50,000 pounds. During the year 1911 the plaintiff took 14 barrels, or 7,000 pounds. In January, 1912, a contract was made for the plaintiff's "requirements for the current year, approximated at 100 barrels." Only 63 barrels were ordered. In February, 1913, a contract was made for the plaintiff's "requirements for the balance of the year 1913, approximated at 100 barrels," and 60 were ordered. In January, 1914, a contract was made for the plaintiff's requirements "approximated at from 50 to 75 barrels" and 60 were ordered. In March, 1915, the contract was made for the plaintiff's requirements "for the balance of the year 1915," and 70 barrels were ordered. In the 1911 contract the price was eight cents a pound. In 1912, eight and one-quarter cents a pound. In 1913, nine cents a pound. In 1914, nine and one-half cents a pound. In 1915, nine and one-half cents a pound, and in 1916, nine cents a pound.

Therefore, it appears that the price for all these years had been fairly stable, and plaintiff's requirements had not exceeded 70 barrels, or 35,000 pounds. Under the contract in suit, the plaintiff ordered for each month as follows: January, 3,500 pounds; February, 4,850 pounds; March, 5,500 pounds; April, 2,800 pounds; May, 10,350 pounds; June, 4,550 pounds; July, 3,050 pounds; August, 6,000 pounds; September, 3,100 pounds; October, 29,750 pounds; November, 59,300 pounds; December, 37,050 pounds, or a total of 169,800 pounds, or 339 3/5 barrels. Thus for this one year the plaintiff ordered 72 more barrels or 36,000 pounds more than it had ordered in the preceding five years. In the last three months of the year 1916 the plaintiff ordered 126,100 pounds which was only 7,400 less than it had ordered for the entire period of the preceding five years, and was almost four times as much as it had ordered in any one year. So remarkable an increase in one year and especially in the last three months of the year, cannot be accounted for by any legitimate increase in the business of the concern. In the four preceding years there was only a variation of 10 barrels between the highest and lowest amount ordered in any year. The reason for this increase is found in these facts: The price for this glue steadily rose during the year until it reached twenty-five cents per pound. Plaintiff in October, 1916, attempted to get a quotation for this quality of glue for the year 1917, and the defendant stated that it was impossible to make any contract price for 1917. During the year 1916 the plaintiff increased its salesmen from eight to eighteen. The plaintiff was urging customers to stock up for the year 1917. One of the letters written by plaintiff in December, 1916, to a customer who was induced to order nine tons of the glue at six cents below the market price is very illuminating. "We cannot hold this proposition open for more than 48 hours, as prices are rising every day. In fact we could sell Cologne glue right here in town for 25 cents per pound cash, and the BB ground glue as high as 21 cents. Conditions in the American glue market are getting worse every day. The fact is, we cannot make a contract for next year at any price, because no raw material is coming from Germany, France or England." This shows that the plaintiff knew that the increased price was due to the scarcity, and

hence high price, of raw materials, which caused an increase in the cost of manufacture. Further, the plaintiff was not in good faith attempting to fill its requirements for 1916, but also to anticipate its 1917 requirements appears from the facts that after defendant had informed plaintiff that no contract could be made for that year, the plaintiff sought to supply its needs for 1917 trade at the price made in the early part of 1916. Not alone was it urging its customers to stock up, and succeeded in obtaining orders for 42,000 pounds from four customers in the last thirty-five days of the year, but also ordered 25,250 pounds more than it had any orders for from customers, thus attempting to secure for itself nearly the amount that it had sold in any former year, and considering the fact that it had so largely sold their next year's needs to its customers, would in all probability have been sufficient to meet plaintiff's requirements for 1917.

The defendant filled the plaintiff's orders to the extent of 64,659 pounds, which was nearly double the highest amount ordered in any previous year, and more than double the average of the amount sold for the preceding four years, but refused to make further deliveries. The defendant all through its dealings has treated the plaintiff with great fairness and consideration. It did not hold the plaintiff to its contract in the year in which the contract called for the sale of 100 barrels, although it could have recovered substantial damages. Nor did it in 1916 refuse to deliver to plaintiff when the reasonable requirements of its business as tested by previous years had been reached, but let it have double the amount and it was not until the purpose of the plaintiff became evident under the guise of the contract, to perpetrate an evident and unconscionable fraud did the defendant refuse to be further imposed upon. Therefore, if the contract was not void for mutuality or for uncertainty, the defendant was entitled to judgment upon the last-mentioned grounds.

I am, therefore, of the opinion that the judgment should be reversed and judgment ordered for the defendant.

CLARKE, P. J., concurred.

Judgment affirmed, with costs.