C. D. JENKINS v. THE CITY ICE AND FUEL COMPANY, an Ohio Corp.

160 So. 215.
Division A.
Opinion Filed March 19, 1935.

*Stapp, Courley, Vining & Ward and Price, Price & Hancock,* for Plaintiff in Error.

DAVIS, J.—The plaintiff in error brought a suit at law against the defendant in error in the Circuit Court of Dade County charging breach of contract and claiming damages therefor. From a judgment for defendant below plaintiff below has sued out this writ of error. The facts as disclosed by the amended declaration to which a demurrer was sustained and judgment entered thereon, are as follows:

T. H. Newman, doing business as Captain Tom's Ice Company in the City of Miami, entered into a written contract with C. D. Jenkins, the plaintiff below, as follows:

"THIS CONTRACT made and entered into this 1st day of May, A. D. 1930, in the City of Miami, County of Dade and State of Florida, by and between T. H. NEWMAN, doing business as Captain Tom's Ice Company, in the said City of Miami, party of the first part, and C. D. JENKINS of the said City of Miami, party of the second part;

"WITNESSETH:

"That in consideration of the mutual covenants and agreements, stipulations and conditions hereinafter set forth, the parties agree each with the other as follows:

"The party of the first part agrees:

"(a)  To sell to the party of the second part whatever amount of ice the party of the second part may need each day for resale in Dade County, Florida, during the existence of this contract;

"(b)  That the selling price of said ice to the party of

the second part shall be at Four Dollars ($4.00) per ton delivered.

"The said party of the second part agrees:

"(a)  That he will purchase all of the ice used in connection with his resale business in Dade County, Florida, from the said first party in accordance with the terms as hereinbefore set forth;

"(b)  Not to purchase ice to be sold in Dade County, Florida, from any person except the said first party, nor at any time for the period of five (5) years from and after the date hereof, either alone or jointly with, or as agent for or employee of any person or persons, firm or corporation, conduct or be engaged, employed or interested in the ice business, or the sale of ice, in Dade County, Florida, other than as agent for or employee of the party of the first part;

"(c)  The said delivery and/or deliveries shall be made in the City of Miami and the Miami district.

"It Is Mutually Understood and Agreed that the party of the second part shall purchase exclusively all ice from the party of the first part, and that the party of the second part shall not purchase any ice from any other ice plant in Dade County, Florida, and should the party of the second part at any time commit a breach of this agreement, then and in that event the party of the first part shall have the right and option, upon notice in writing to the party of the second part, to cancel this contract, and upon such cancellation the party of the first part will be relieved from all obligations hereunder.

"It Is Further Understood and Agreed that the party of the first part will and does guarantee that if on any day he cannot supply the demand for ice, he will furnish to the party of the second part, notwithstanding such shortage, on

said day an amount of ice equal to the amount shown by the books of the party of the first part to have been furnished by him to the party of the second part on the thirtieth day prior thereto.

"IT IS FURTHER UNDERSTOOD AND AGREED, that should the party of the second part at any time desire to sell or assign his interest to any other person, firm or corporation, that he must first obtain the written consent thereto of the party of the first part.

"IT IS FURTHER UNDERSTOOD AND AGREED that all payments under this contract are to be cash and all accounts are payable on Monday of each and every week for the ice furnished by the party of the first part to the party of the second part during the previous week.

"IT IS FURTHER UNDERSTOOD AND AGREED that all sales and deliveries of ice by the party of the first part to the party of the second part shall be subject to and contingent upon strikes, riot, war, fire, windstorm, explosion, accident, failure, or curtailment in the party of the first part's supply of ice, reasonable delays of carrier, and/or delays beyond the party of the first part's reasonable control.

"IT IS FURTHER UNDERSTOOD AND AGREED that this contract shall be effective for a period of five (5) years from and after the date hereof.

"IT IS FURTHER UNDERSTOOD AND AGREED that this contract shall be binding upon and inure to the benefit of the heirs, successors or assigns of the party of the first part.

"IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year first above written.

"T. H. NEWMAN (Seal)
"C. D. JENKINS (Seal)"

On June 19, 1930, the defendant City Ice and Fuel Company did purchase, by bill of sale, of and from T. H. New-

man, the aforementioned contracting party, the good will of the Captain Tom's Ice Company business, together with all buildings, machinery, delivery equipment, inventories, contracts and such other assets of said ice business (with certain stated exceptions not material here) for and in consideration of the sum of ten dollars and other valuable considerations.

As a part of the consideration for the sale from Newman to City Ice and Fuel Company, it is alleged in one count of plaintiff's declaration that the latter agreed to carry out and to comply with the terms and conditions of all of the contracts of said T. H. Newman, one of which contracts so purchased by defendant the plaintiff alleges to be the contract above quoted. In consequence of the last mentioned circumstance, the plaintiff charges that the said City Ice and Fuel Company has bound itself to carry out and fulfill the aforesaid contract of T. H. Newman with the present plaintiff, C. D. Jenkins.

The instrument of conveyance by which City Ice and Fuel Company acquired by purchase the Captain Tom's Ice Company business from Newman is attached to the declaration and made a part of it. That instrument shows that said T. H. Newman, as party of the first part, granted, bargained, sold, transferred and delivered to the City Ice and Fuel Company the good will of the Captain Tom's Ice Company business, together with all buildings, machinery, delivery, equipment, inventories, "contracts and such other assets" of said ice business as were therein described. By the bill of sale just mentioned, however, no direct reference to the Newman-Jenkins contract other than that just stated, was made.

The order of the court sustaining the defendant's demurrer fails to specify as the statute (Section 4310 C. G. L.,

2644 R. G. S.) requires, upon just what specific grounds it was sustained. But two principal objections appearing to have been urged in said demurrer against plaintiff's right to maintain this suit are (1) that the contract declared on is so lacking in certainty and mutuality as to be void and unenforceable; (2) that no sufficient facts are pleaded in the amended declaration to show that the Newman-Jenkins contract declared on as a basis for recovery of damages, ever became binding upon the City Ice and Fuel Company by assumption, assignment or otherwise.

As to the first count of the declaration we find the last mentioned ground of demurrer to be well taken. The mere purchase by City Ice and Fuel Company of the good will and properties of Captain Tom's Ice Company under the circumstances alleged in that count would not *per se* import a liability upon and against City Ice and Fuel Company as purchaser of the business to fulfill the Newman-Jenkins contract.

A third party is not liable as a rule upon a contract, express or implied, unless he was one of the immediate parties to the agreement or has become a party to it by subsequent agreement with the original parties. The assignment of a personal contract does not give to the other party to the original agreement a right of action against the assignee for its breach, nor is the mere assignee liable unless he has expressly agreed to become bound or has promised upon a sufficient consideration to perform for the benefit of a third party. 2 Elliot on Contracts 662, 725; 2 R. C. L. 625, *et seq.* So the demurrer as to the first count of the amended declaration was properly sustained on grounds 9 and 12 of plaintiff's demurrer.

As to the second count of the amended declaration, the allegation on this point is "that as part of the consideration

for said sale (of the ice business and good will) the defendant agreed to fulfill said (Newman-Jenkins) contract and that such agreement to fulfill said contract was made by the parties for the use and benefit of the plaintiff." Such allegation was sufficient to show an assumption of the obligation of the contract sued upon sufficient to bind City Ice and Fuel Company to perform it at plaintiff's Jenkins request, inasmuch as the agreement for its assumption is alleged to have been made for his benefit.

A parol assumption is good in cases of this kind if it was a part of the consideration for the purchase of a business with which the contract was connected, and such parol assumption may be enforced at law. Enns-Halbe Co. v. Templeton, 101 Fla. 609, 135 Sou. Rep. 135. See Beitel v. Dobbin (Tex.), 44 S. W. Rep. 299.

On the proposition of want of mutuality as a ground for avoidance of a contract of the kind here sued on, the rule approved by the weight of authority appears to be that stated in Ferenczi v. National Sulphur Co., 11 N. J. 262, 166 Atl. Rep. 477, text 478, as follows:

"Contracts to furnish such material as one may need or require in his business for a specified time are, by the weight of authority, held mutual and binding on the parties, where the nature of the purchaser's business is such as to make the quantity of the article he will need subject to a reasonably accurate estimate. The basis of the rule is that the purchaser's obligation to buy to the extent of his requirements or needs supplies mutuality. Pittsburgh Plate Glass Co. v. H. Neuer Glass Co., *supra,* (253 Fed. 161); Lima Locomotive, etc. Co. v. National, etc., Co. (C. G. A.) 155 F. 77, 11 L. R. A. (N. S.) 713; Walker Mfg. Co. v. Swift & Co. (C. C. A.) 200 F. 529, 43 L. R. A. (N. S.) 730; Loudenback Fert. Co. v. Tenn., etc. Co. (C. C. A.) 121

F. 298, 61 L. R. A 402; Inman Bros. v. Dudley, etc., Co. (C. C. A.), 146 F. 448; 74 A. L. R. 477, annotation; Atlantic Pebble Co. v. Lehigh Valley R. R. Co., 89 N. J. Law, 336, 98 A. 410, 412; East v. Cayuga Lake Ice Line 66 Hun, 636, 21 N. Y.S. 887; Wells v. Alexandre, *et al.,* 130 N. Y. 642, 29 N. E. 142, 15 L. R. A. 218; Ehrenworth v. Stuhmer, 229 N. Y. 210, 128 N. E. 108, 110; Schlegel Manufacturing Co. v. Peter Cooper's Glue Factory, 189 App. Div. 843, 179 N. Y. S. 271; Reeves v. Fulton Market, 105 Misc. 130, 173 N. Y. S. 568, 570."

See also note to 14 A. L. R., page 1300 *et seq.,* and cases cited.

Upon a research of the authorities we find that the adjudicated cases deal with contracts that naturally fall into the following classifications with reference to the proposition of mutuality of engagement as an element of the enforceabaility of agreements like that now under consideration:

(1) Agreements by the buyer to buy and the seller to sell such quantity, if any, as the buyer may want, i. e. capriciously desire, the buyer being at liberty to buy elsewhere articles of the kind in question;

(2) Agreements by the buyer to buy and the seller to sell all that the buyer may need or require in his established business;

(3) Agreements of the buyer to buy and the seller to sell, all that the buyer may want during the terms of the contract, i. e. capriciously desire, the buyer agreeing not to buy elsewhere during a given time any of the articles covered by the contract.

The contract sued upon in the present case falls more nearly within the class of contracts last described. It is under seal and recites a consideration on its face. We shall

therefore examine into its validity bearing in mind certain well established principles concerning law applicable to agreements of this particular character. And in such examination we shall discard any matters of special defense that may be available to the party sought to be held, such as special facts which go to the discharge of the contract rather than the validity of its inception—for example mutual abandonment, that the contract is contrary to some established public policy, and the like.

It is generally recognized that a promise, or apparent promise, which reserves by its terms to the promisor the privilege of alternative conduct, is insufficient as a consideration if any of the reserved alternative courses of conduct would be insufficient if it alone were bargained for. 1 A. L. I. page 88. The converse of this proposition is likewise true. This is so because where a promise is sufficient as a consideration if it alone were bargained for and given in exchange for a promise on the other side, it is sufficient as a consideration for as many promises as the opposite party has bargained for and given in exchange for it. A. L. I. page 94.

It is thus but giving effect to the elementary principle of contracts that mutually enforceable promises may constitute a valid consideration for each other in an executory contract, to hold that the parties are legally bound where, in an executory contract, there are mutual promises which are sufficiently definite as to time and subject matter so that, taken in consideration with the circumstances of the parties at the time the contract was entered into, there is sufficient data to enable them to be enforced. Such a contract will be upheld and enforced in an action at law where it appears that the agreement of the buyer set forth in such contract imposes upon him an enforceable obligation to purchase of

the seller and him alone during the life of the contract all of a commodity specified therein which such buyer may buy during the designated period, even though the buyer assumes no unconditional obligation to purchase any particular quantity thereof during the contract period.

In such cases the unconditional and binding promise of the buyer to purchase whatever may be his contemplated requirements from the seller alone, if he purchases at all during the existence of the contract, is a sufficient consideration in law to support a mutual promise on the part of the seller to sell to the buyer the specified commodities during the contract period at specified prices at a stipulated place of performance. Such appears to be the rule discernible from the better reasoned cases, if it is not also the rule supported by the decided numerical weight of authority.

We hold, therefore, that an agreement in writing under seal, such as that involved in the case now before us, whereby the buyer has agreed to buy, and the seller has agreed to sell, all the ice at a specified price, for a specified purpose, during a specified period of time, and limited to being performed in a stipulated locality, that the buyer may elect to order, i. e. capriciously desire to order within the limits of his needs, in consideration of the promise of the buyer, as the owner and operator of a then established ice business, not to buy any ice for the specified purpose elsewhere than from the seller during the contract period, is to be upheld on its face as being supported by a sufficient legal consideration to sustain an action at law based upon its repudiation and consequent breach by the seller. This is so, even though the resultant action may lead to nothing more than a recovery of nominal damages only, in those special cases where for want of sufficient proof of injury, no better measure of damages can be recovered. Jenkins

& Co. v. Ansheim Sugar Co., 247 Fed. (C. C. A. 9th Circuit) 958; Ramey Lumber Co. v. John Schroeder Lumber Co., 237 Fed. 39 (text 44), 150 C. C. A. 241; Selected Readings on the Law of Contracts (Cardozo) 416 *et seq.;* Texas Company v. Pensacola Maritime Corp. 279 Fed. (C. C. A. 5th Circuit) 19; Southwest Dairy Products Co. v. Coffee & Moore, 62 Fed. (2nd), (C. C. A. 5th Circuit) 174.

Turning now to the particular written contract here sued on, which has been hereinbefore set forth in this opinion in full, it discloses on its face that at the time it was made the said T. H. Newman, the buyer, was then doing business in Miami as Captain Tom's Ice Company; that the subject of the contract was specified as ice (in general) and (in particular) such ice only as the buyer would "need" each day for resale in Dade County during the period of five (5) years from its date; that the agreed selling price of the ice to be purchased was fixed at four dollars per ton delivered; that the promise of the seller was to sell and deliver the ice "needed each day for resale in Dade County" by the buyer in his then going and established resale ice business at the price stipulated; that the promise of the buyer was to "purchase all of the ice used in connection with his resale business in Dade County" from the buyer in accordance with the terms in the contract set forth, and not to purchase either directly or indirectly any ice to be sold by him in Dade County from any other person except the seller, during the five years life of the contract, or so long as it should not be rescinded. Indeed the buyer promised more than the seller in consideration for the seller's promise to sell the former what ice he needed, because the buyer promised not to be engaged, employed or interested in the ice business during the contract period, other than as agent for or employee of the seller with reference to the sale of ice. The agreement

was in solemn form and under seal. It is presumed to have been intended as a contractually binding agreement. How it could be stated in more positive terms and with more specific description of its mutual obligations in view of its generalized purpose, is hard to imagine.

The second count of the declaration, taking its allegations to be true as alleged, as we must upon our consideration of the defendant's demurrer to it, sufficiently alleges that as a part of the consideration for the City Ice and Fuel Company's purchase of the Captain Tom's Ice Business from T. H. Newman, that it agreed to take over and did assume to perform the contract sued on that said T. H. Newman as seller had previously entered into with the plaintiff in error before said Newman sold his business to said City Ice and Fuel Company.

As we have just pointed out, the contract itself is on its face a valid and enforceable contract against Newman. Therefore if City Ice and Fuel Company, by its assumption of such contract, has become liable to perform its terms as alleged in the second count of the declaration, the contract is likewise enforcable against the defendant in error, who as assignee of the contract, was made defendant below in this case.

In upholding a recovery of damages for breach of a similar contract (perhaps one not so strong in its formal aspects as the one here in controversy) the Circuit Court of Appeals for the Fifth Circuit, in the case of Texas Company v. Pensacola Maritime Corp., 279 Fed. 19 (tex. 23) *supra,* recently said:

"We do not think the original contract as made was invalid for want of mutuality. The only basis of this contention is that the purchaser had no established business in the sale of bunker oil at Pensacola, and it is insisted that

therefore its undertaking to take all of the oil it might be able to sell to ships at Pensacola during a fixed period was too indefinite an undertaking to afford a consideration for defendant's promise to sell to it all oil it might so need. It seems to us that the objection does not arise on the validity of the contract, but would relate alone to the possible ability to prove specific damages in case of a breach.

"The contract was an undertaking on the purchaser's part to buy all of its requirements at Pensacola from the defendant. It clearly agreed not to buy for such requirements during the terms of said contract, except from the defendant. The defendant agreed to sell to plaintiff all such requirements up to certain fixed quantities. Here was the consideration of a promise both to do and to refrain from doing a certain thing as a consideration for the promise to sell certain goods at fixed prices. It was not a mere under-taking to buy what plaintiff might desire, but an undertaking to take all of its needs from defendant alone, within the quantities stated.

"If the purchaser, during the first 60 days of the contract, had placed contracts with ships coming to Pensacola for all of the oil contracted to be furnished, could the seller have declined to furnish the oil, on the ground that the contract was too indefinite to be binding? Or if the purchaser, during each month of the contract, had required oil for ships at Pensacola to the full amount called for by the contract, and had declined taking it from the seller, would not the seller have had a good cause of action against the purchaser?

"There would have been no failure of certainty as to the proof of the damages in such cases. The obligation to take all oil needed in its business of furnishing bunker oil to ships, which business, though new, was being actively

pressed, was as binding an obligation as if the promisor had been previously engaged in the business of furnishing such bunker oil. While the results of such business were not apparently as certain, the obligation was as fixed, and furnished a sufficient consideration for the promise to sell to it such oil.

"Even if actual damages could not be proven, or could be shown with legal sufficiency only to a small amount, the right to recover damages legally proven, or at least nominal damages would exist, Fidelity & Deposit Co. v. Aultman, 58 Fla. 228, 230, 50 South. 991. The objection that, in the absence of an established business, damages for a breach cannot be definitely shown, seems to us to go to the quantum of damages properly provable, when such contract is breached, and not to the validity of the contract as a binding obligation."

Where a count in a declaration at law for recovery of an executory contract does not wholly fail to state a valid cause of action, it is error to sustain a demurrer thereto. See Fidelity & Deposit Co. v. Aultman, 58 Fla. 228, 50 Sou. Rep. 991; Boyle v. Dolan, 97 Fla. 253, 120 Rep. 334.

The judgment as to the first count of the declaration is affirmed. The judgment as to the second count of the plaintiff's amended declaration is reversed with directions to overrule the defendant's demurrer to that count and to have such other proceedings thereon as may be according to the requirements of law and not inconsistent with the holding of this opinion.

Affirmed in part and reversed in part and remanded with directions.

WHITFIELD, C. J., and BROWN, J., concur.

ELLIS, P. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.