711 So.2d 72 (1998)
Johnny O. PULLAM, Appellant,
v.
HERCULES INCORPORATED, Appellee.
No. 96-4184.
District Court of Appeal of Florida, First District.
April 9, 1998.
Rehearing Denied June 8, 1998.
*73 Steve M. Watkins, III, Tallahassee, for Appellant.
Mary L. Wakeman of McConnaughhay, Duffy, Coonrod, Pope & Weaver, P.A., Tallahassee, for Appellee.
ERVIN, Judge.
This is an appeal from a final workers' compensation order denying a petition for benefits filed by claimant Johnny Pullam against Hercules Incorporated (Hercules). We agree with claimant that the judge of compensation claims (JCC) incorrectly concluded that Hercules could not be considered claimant's statutory employer under the terms of section 440.10(1)(b), Florida Statutes (1991). We therefore reverse and remand for further proceedings.
On December 9, 1992, claimant, who was employed by B.G. Swilley Trucking Company (Swilley or subcontractor) to remove pine stumps from land owned by St. Joseph Land and Development Company (St. Joe), severely lacerated his right arm. At such time, Swilley had no workers' compensation coverage. Claimant subsequently filed a petition for medical benefits against Hercules on the theory that it was his statutory employer, because Swilley was performing work that Hercules had delegated to it under a contract between Hercules and St. Joe. Claimant based his claim on section 440.10(1)(b), which provides:
In case a contractor sublets any part or parts of his contract work to a subcontractor or subcontractors, all of the employees of such contractor and subcontractor or subcontractors engaged on such contract work shall be deemed to be employed in one and the same business or establishment; and the contractor shall be liable for, and shall secure, the payment of compensation to all such employees, except to employees of a subcontractor who has secured such payment.
Hercules' status as a statutory employer depends upon whether, in the words of the statute, it is a "contractor [who] sublets any part or parts of his contract work to a subcontractor." In order for Hercules to be considered a contractor it must have "incurred a contractual obligation to a third party, a part of which obligation the [contractor] has delegated or sublet to a subcontractor whose employee is injured." Miami Herald Publ'g v. Hatch, 617 So.2d 380, 381 (Fla. 1st DCA 1993). See also Roberts v. Gator Freightways, Inc., 538 So.2d 55, 57 (Fla. 1st DCA) (to be considered a contractor, the "primary obligation in performing a job or providing a service must arise out of a contract"), approved, 550 So.2d 1117 (Fla. 1989).
The evidence discloses that Hercules had contracted with St. Joe to remove pine stumps from real property owned by St. Joe. Thereafter, Hercules contracted with Swilley, delegating to Swilley its right to remove the stumps and to haul them to the Hercules plant where resin was extracted. The resin *74 was then sold to third parties for making numerous products, including adhesive sealants, chewing gum, toothpaste, citrus drinks, and cleaning materials.
In denying the claim, the JCC found that Hercules could not be considered a "contractor" under the statute, in that it was not performing a job or providing a service arising out of a contract. The pertinent findings of the JCC in this regard are as follows:
[T]hey [Hercules] paid St. Joe for the right to remove stumps.... Hercules was not performing a job nor providing a service arising out of a contract.... Hercules produces a finished product to wit: Resin. They manufacture resin. There is no obligation to any third party. Further, the agreement between Hercules and St. Joe is not to clear and/or remove stumps. Only a right to remove is granted and Hercules pays for the right. There is no actual obligation to remove any stumps. Therefore, claimant is not a statutory employee of Hercules.
We assume from the above language that the JCC considered there was no mutuality of obligation between Hercules and St. Joe, because the contract conferred on Hercules only the right to remove stumps from St. Joe's property, and nothing was stated therein requiring their removal, or when, during the term specified, they should be extracted. The JCC apparently decided that the contract was in the nature of an executory contract, in that it depended on a future performance or event, i.e., the exercise of Hercules' right to remove. The rule is well settled that a contract which is not mutually enforceable is considered an illusory contract. See Pan-Am Tobacco Corp. v. Department of Corrections, 471 So.2d 4, 5 (Fla. 1984); Etheredge v. Barkley, 25 Fla. 814, 6 So. 861 (1889).
What the JCC failed to realize, however, is that the contract's provisions obligated St. Joe to supply all of Hercules' requirements for the use of stump wood during the term designated. Where a contract is for a specified time and obligates the purchaser to buy all that he or she needs from the vendor, it is held that the purchaser's obligation to buy to the extent of his or her requirements supplies mutuality. See Jenkins v. City Ice & Fuel Co., 118 Fla. 795, 160 So. 215 (1935). And it is immaterial to the issue of mutuality of obligation that the right to buy is at the purchaser's option or discretion. Id.
The above rule has been codified in Florida's Uniform Commercial Code as follows:
A lawful agreement by either the seller or the buyer for exclusive dealing in the kind of goods concerned imposes unless otherwise agreed an obligation by the seller to use best efforts to supply the goods and by the buyer to use best efforts to promote their sale.
§ 672.306(2), Fla. Stat. (1991). Such contracts are not deemed to be indefinite or lacking in "mutuality of obligation since, under this section, the party who will determine quantity is required to operate his plant or conduct his business in good faith and according to commercial standards of fair dealing in the trade so that his output or requirements will approximate a reasonably foreseeable figure." 19A Fla. Stat. Ann. 222 Uniform Commercial Code cmt. 2 (1993).
In its renewal contract with St. Joe, Hercules agreed, during the term from June 1, 1992, through May 31, 1993,[1] to pay the latter a specified sum for each ton of stump wood delivered to Hercules' plant. St. Joe in turn agreed to sell to Hercules "all of the original growth dead pine top wood and stumps ... suitable and acceptable for processing by Hercules," located on lands St. Joe owned during the term of the agreement. This contract was but one of a series of harvesting contracts between the parties, dating back to 1983. In order to carry out the terms of the sale, St. Joe granted to Hercules the right to come onto its property and harvest all such suitable stumps. Hercules thereafter entered into a harvesting contract with Swilley, delegating to it its right to remove dead stumps from St. Joe's land, and promising to pay Swilley a specified amount for each ton delivered to its processing plant in Brunswick, Georgia. Given the terms of the parties' agreements, the contract with St. *75 Joe should be understood as obligating Hercules to buy stump wood to the extent of its requirements or needs, which, as such, supplies the essential element of mutuality and is binding.
Even if the contract in issue could not be considered a binding requirements or needs contract at the time of its inception, the courts generally recognize that if the buyer thereafter orders shipment of specific amounts of the commodity contracted for, the buyer is bound to the extent of the quantity ordered. L.S. Tellier, Annotation, Mutuality and Enforceability of Contract to Furnish Another with His Needs, Wants, Desires, Requirements and the Like, of Certain Commodities, 26 A.L.R.2d 1139, 1149-1151 (1952). In the case at bar, the JCC apparently overlooked the fact that at the time of claimant's injury, a number of stumps had already been removed and loaded on the truck that claimant operated. Clearly, at such time, St. Joe could have enforced the terms of the agreement by demanding payment for the quantity of the stumps then actually taken.
Moreover, the contract was enforceable at the time claimant was injured, because Hercules had substantially performed its part of the agreement through the task that it had delegated to Swilley. Substantial performance is performance "nearly equivalent to what was bargained for," meaning "that the owner [here Hercules] can use the property for the use for which it is intended." J.M. Beeson Co. v. Sartori, 553 So.2d 180, 182 (Fla. 4th DCA 1989). Although the contract called for Hercules to pay St. Joe at the time of delivery to its plant of each ton of stumps, whereas, at the time of injury, Pullam had only removed the stumps from St. Joe's property and loaded them on the truck, we deem the contract was then substantially performed by Hercules through its subcontractor, Swilley, because at such time it had substantial possession of the stumps for the use for which they were intended, i.e., to be processed by Hercules into resin extract.
The dissent takes issue with the majority's construction of the contract and appears to argue that we should defer to the JCC's interpretation of the same, presumably to the same extent that deference should be given the findings of a lower tribunal if they are supported by competent, substantial evidence. What the dissent has evidently failed to consider, however, is the general rule of contract construction which recognizes that because the interpretation of a written contract is one of law, a reviewing court is not restricted from reassessing the meaning of the contract and, if appropriate, from reaching a construction contrary to that of the trier of fact. See Florida Bd. of Regents v. Mycon Corp., 651 So.2d 149, 153 (Fla. 1st DCA 1995); Leseke v. Nutaro, 567 So.2d 949, 950 (Fla. 4th DCA 1990).
The dissent also takes issue with the majority's reliance on the contract Hercules has with St. Joe as the means for finding Hercules a statutory employer under section 440.10. In so doing, the dissent contends that Pullam based his statutory employee argument solely on a contract between Hercules and those who buy the resin, and that Pullam expressly conceded it was not a party to the contract between Hercules and St. Joe. The dissent's focus on one unfortunate, isolated sentence in Pullam's brief ignores the argument made below and the balance of the argument presented on appeal.
Pullam's closing argument summarized his position in favor of a statutory employee finding. He referred to three contracts: One between Hercules and St. Joe to purchase pine tree stumps; a second between Hercules and Swilley to harvest and haul the stumps; and a third between Hercules and the third parties who purchase the resin after it is extracted from the stumps harvested from St. Joe's land and hauled by Swilley to Hercules' plant. Pullam pointed out that removal of the stumps is an implicit obligation in all three contracts, and it is this obligation that Hercules delegated to Swilley. Thus, the argument made below clearly encompasses reliance on the contract Hercules had with St. Joe to support Pullam's contention that Hercules was his statutory employer.
In reviewing the entirety of Pullam's argument on appeal, we refuse to consider the isolated statement that "Swilley is not a subcontractor *76 to the prime contract between Hercules and St. Joe" as a clear, intentional abandonment of Pullam's argument that he is a statutory employee by virtue of the contract entered into between Hercules and St. Joe. Pullam's argument on appeal clearly refers to the three contracts above mentioned, and he relies on Hercules' subletting of the contract work of harvesting pine tree stumps as the basis for a finding of statutory employer. Thus, the majority, in holding Hercules to be a statutory employer as a result of its delegation of the harvesting of stumps to Swilley, has relied on a theory fully presented below and preserved and argued on appeal.
For all of the above reasons, we are of the firm opinion that the JCC erred in holding that Hercules was not performing a job or service arising out of the contract. The contract clearly contemplated that Hercules or its delegate could remove pine stumps from St. Joe's property to the extent necessary to satisfy Hercules' needs. Accordingly, there is no competent, substantial evidence to support the JCC's finding that Hercules was not under a contractual obligation to any third party. The evidence submitted leads to the ineluctable conclusion that the contractor, Hercules, sublet part of its express contract work to a subcontractor, Swilley. Under the circumstances, all of the employees of Swilley engaged in such work must be deemed to be employed in the same business or establishment as that of Hercules. § 440.10(1)(b).
REVERSED and REMANDED.
PADOVANO, J., concurs.
BENTON, J., dissents with written opinion.
BENTON, Judge, dissenting.
As the majority explains, coverage turns on whether Hercules, Inc. (Hercules) "incurred a contractual obligation to a third party, a part of which obligation [Hercules] delegated or sublet to [B.G. Swilley Trucking Company (Swilley) ] whose employee [Mr. Pullam wa]s injured." Miami Herald Publ'g v. Hatch, 617 So.2d 380, 381 (Fla. 1st DCA 1993). See Gator Freightways, Inc. v. Roberts, 550 So.2d 1117 (Fla.1989); Jones v. Florida Power Corp., 72 So.2d 285 (Fla. 1954); Sheedy v. Vista Properties, Inc., 410 So.2d 561 (Fla. 4th DCA 1982); Hammel v. Pittman, 389 So.2d 1220 (Fla. 1st DCA 1980); South Seas Plantation, Ltd. v. Acevedo, 387 So.2d 1035 (Fla. 1st DCA 1980); Foulk v. Perkins, 181 So.2d 704 (Fla. 2d DCA 1966).
Other states' workers' compensation laws are written broadly enough to cover any employee who helps get part of a manufacturer's regular work done, even if the employee works for an independent contractor instead of directly for the manufacturer. E.g., § 8-41-401, Colo. Stat. (1994 & 1998 Elec. Update); § 42-1-400, S.C. Stat. (1997). See Glass v. Dow Chemical Co., 325 S.C. 198, 482 S.E.2d 49 (1997). Our own Legislature may some day rewrite section 440.10, Florida Statutes (1997), to bring a worker like Mr. Pullam within the ambit of the Workers' Compensation Law. But it has not done so yet, and we should apply the statute as it is written.
Under statutory schemes like Florida's, "the question whether the subdivided work is part of the principal contractor's work usually answers itself." 4 Larson's Workers' Compensation Law § 49.16(b), at 9-49 (1997). The same commentator explains: "The very fact that it is a parcelled-out fraction of the main job is proof enough." Id. See Southern Sanitation v. Debrosse, 463 So.2d 420 (Fla. 1st DCA 1985).
Although he did not put on evidence that Hercules was contractually obligated to produce resin or to furnish resin to any customer, Mr. Pullam argues that the Workers' Compensation Law makes him eligible for benefits because he
is the statutory employee of Hercules by virtue of Hercules' obligation to provide resin to its customers and an essential part of that obligation is the procurement of dead pine wood and stumps from third party landowners and the harvesting and hauling of the wood and stumps to Hercules' plant in Brunswick, Georgia.
Initial Brief, at 6 (emphasis supplied). Rejecting as unproven the contention that Hercules had a contractual obligation to purchasers of resin, the court rightly declines to *77 reverse on this basis, or to hold a manufacturer liable as the statutory employer of an uninsured independent contractor's employee unless the employee is helping the manufacturer discharge some contractual obligation.
The majority nevertheless reverses the ruling by the judge of compensation claims that Mr. Pullam does not qualify as a statutory employee on another theory of the case altogethera theory that the appellant himself expressly eschews. Although the issue is not raised on appeal, the majority decides that Hercules was under a contractual obligation to St. Joe Paper Company and one of its subsidiaries (St.Joe) to harvest wood. On this point, the judge of compensation claims found:
[T]he agreement between Hercules and St. Joe is not to clear and/or remove stumps. Only a right to remove is granted and Hercules pays for the right. There is no actual obligation to remove stumps.
But the majority rejects the lower tribunal's determination in favor of its own not unproblematic interpretation of the contract between Hercules and St. Joe and reads the contract as obligating Hercules to purchaseand harvestany and all wood it needs from St. Joe.
In my view, even reaching this question runs afoul of accepted rules of decision, in light of Mr. Pullam's stated position, which he clearly sets out in his initial brief, at page 16:

Swilley is not a subcontractor to the prime contract between Hercules and St. Joe but to the prime contract between Hercules and its customers, which, in conjunction with the collateral contract between St. Joe and Hercules for the purchase of stump wood creates the implied obligation of obtaining dead pine wood and stump wood for processing extract.
(Emphasis supplied.) In short, Mr. Pullam concedes the point on which the court now reverses. I respectfully dissent.
NOTES
[1] This was the contractual period existing at the time of claimant's injury.